**Roger DOLESE and the Dolese Company, Transferees of Dolese Bros. Co., a dissolved corporation, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**The DOLESE COMPANY and Dolese Concrete Company (wholly-owned subsidiary of The Dolese Company), Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**Roger DOLESE, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**Nos. 77–1511 to 77–1513.**

United States Court of Appeals, Tenth Circuit.

Argued Nov. 15, 1978.

Decided Aug. 20, 1979.

Rehearing and Rehearing En Banc Denied Oct. 10, 1979.

Donald P. Moyers and John H. Conway, Jr., Tulsa, Okl., for appellants.

Murray S. Horwitz, Atty., Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Grant W. Wiprud, Attys., Tax Div., Dept. of Justice, Washington, D. C., and John E. Green, U. S. Atty., Oklahoma City, Okl., with him, on brief), for appellee.

Before SETH, Chief Judge, and BREITENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

These appeals arise out of suits brought by Roger Dolese, The Dolese Company, and Dolese Concrete Company, for refunds of federal income taxes and· interest totaling altogether $1,533,755.38. The cases have been before this Court once previously. *Dolese v. United States,* 541 F.2d 853 (10th Cir. 1976). After remand the trial court entered summary judgment in favor of the United States in each case on the issues under consideration here.

The issues on appeal are whether summary judgment was properly granted 1) denying the corporations' income tax deductions for amounts paid for litigation expenses

pursuant to a state court order; 2) taxing Roger Dolese (Roger) on such payments as constructive dividends from the corporations; and 3) treating advances by the corporations for payment of Roger's personal living expenses as dividends rather than loans.

Most of the facts giving rise to these suits and the rulings appealed from commenced with a separate maintenance action filed in 1959 by Roger's wife, Ardith, later changed to a suit for divorce. That action was pending more than nine years and finally terminated in 1968 with a divorce decree on Roger's cross-petition. Large sums of money were involved, much acrimony, and many charges and countercharges. Approximately $1.3 million in fees and expenses were paid by Roger and the companies in connection with the litigation.

An unusual feature of the divorce petition was that it named three corporations, The Dolese Company, Dolese Concrete Company and Dolese Bros. Co., as party defendants in the original action. The Dolese Company was and is 100% owned by Roger Dolese, and it in turn owns 100% of the Dolese Concrete Company. (Until January 17, 1969, Ardith owned 16% of Dolese Concrete Co., and Roger and Ardith owned 4% as trustees for four children; these shares were redeemed pursuant to the divorce settlement order.) Dolese Bros. Co. was wholly owned by Roger Dolese and The Dolese Company; it was liquidated in 1970 and is now operated as a partnership between Roger and The Dolese Company.

The divorce petition accused Roger of threatening to deplete and dissipate the assets of the companies in order to deprive Ardith of her rights as wife. She sought an order restraining Roger and the corporations from any activities, "EXCEPT as will permit the defendants to conduct their business activities in a manner which is customary, usual, and ordinary in businesses of like nature." By court order entered early in the state litigation the corporations were prohibited from paying investigative expenses. By mid-1967 Roger had incurred approximately $600,000 of legal fees and

legal expenses, at least $350,000 of which was spent to investigate the marital history and infidelities of his wife and the paternity of the children. On August 28, 1967, Judge Geo. Howard Wilson was assigned to take over the state court litigation. Shortly thereafter, on September 7, 1967, Ardith filed a motion to oust Roger from the management of the companies and install herself in his place, making various allegations of his incompetency based upon behavior set out in the motion. This was taken under advisement by the court and finally ruled upon, in Roger's favor, in the final settlement of the divorce proceedings on December 19, 1968. Commencing November 16, 1967, the state court issued a series of orders requiring legal fees and expenses to be paid one-fourth by each of the three corporations and Roger. The ruling was ultimately extended to all litigation expenses, including reimbursement of Roger for the more than $600,000 he paid prior to the first such order. These orders were *sua sponte*, apparently without request from or consultation with Roger's attorneys, and were not resisted by Ardith's counsel. According to the proffered affidavit of the state court judge the rulings were based upon his conviction that this "was not just a divorce action but that it included a conspiracy to take over control of these Dolese companies," and the companies "were deeply involved and were fighting for their corporate lives."

It is the one-fourth share of the legal and other expenses of this litigation paid by each of the companies that they seek to deduct as "ordinary and necessary" under Internal Rev. Code of 1954 (IRC) § 162. The United States claims they are not deductible expenses and their payment constituted constructive dividends to Roger.

The other issue in the case concerns the practice, commenced after 1948 according to the deposition of Roger, of having The Dolese Company or the Dolese Concrete Company pay most of his personal living expenses, treating the advances as loans to Roger and accounts receivable on the corporations' books. The charges were offset by

payments made by Roger from time to time. Through 1964 no interest was paid on the balances owed. Thereafter notes were given by Roger once each year, carrying 4% interest and a specified due date one year ahead. When due the interest was paid and a new note executed for the balance then owing, including new advances. The sums involved were very substantial; net advances after offsets were $187,436 in 1966, $151,761 in 1967, and $150,066 in 1968. The total balances owed to the companies were $1,817,133 as of March 31, 1968. The advances, summarized in exhibits in the record, include support money for Ardith, children's educational expenses, expenses and improvements on the home, professional fees, cars, personal taxes, insurance, travel and many miscellaneous expenses. While the evidence indicates that Roger had only about $125,000 per year gross personal income in these years the books of the corporations show substantial credits given him from time to time against the loans. These credits allegedly totaled $2.2 million since 1949. What the sources of these repayments were is unclear in the record, although approximately $450,000 came as a result of the court order requiring the three companies to reimburse Roger for expenses incurred in the litigation. The sum of $599,900 was credited to the account one day in 1970, but withdrawn again on the same day. Apparently an interest in a rock quarry owned by Roger was transferred to a company and utilized as an offset on one other occasion. It appears to be undisputed that the net worth of Roger Dolese was at least $10 million during these years, and that he did not have sufficient assets outside the stock interests in the three companies to liquidate his debts. But he did have personal borrowing power sufficient to procure a loan from a bank to pay off the entire balance of these debts. Allegedly Dolese Bros. Co. was liquidated to provide assets with which Roger intends, when this tax litigation is finished, to liquidate his accounts payable to the companies.

The United States contends the advances treated as accounts receivable by the companies are in fact constructive dividends to Roger, and are not properly characterized as loans. At all times the corporations have had earnings and profits sufficient to support the government's position if it is legally correct.

In resolving the questions on appeal we must keep in mind that summary judgment was granted by the trial court. Therefore, we must reverse unless the government's position is unassailable on any view of the facts.

I

On the issue of deductibility to the corporations of these litigation costs as ordinary and necessary business expenses, the government relies principally upon the "origin of the claim" test set forth in *United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). It asserts that the litigation expenses were obviously incurred in connection with the divorce of Roger and Ardith Dolese and do not arise out of the *corporations' profit-seeking activities*. *Gilmore* involved a divorce action in which the husband's assets were almost entirely in the stock of three essentially wholly-owned corporations, and nearly all of his income was derived from salaries and dividends paid by them. He successfully fought to retain his ownership and control. In most respects it is factually close to the instant case, except in *Gilmore* the corporate owner attempted to deduct divorce fees and expenses on his personal tax return. The Supreme Court rejected the contention that these expenses were ordinary and necessary in the conservation of property held for income, stating that the deductibility of litigation costs depends upon whether the claim "*arises in connection with* the taxpayer's profit-seeking activities," not upon the "*consequences* that might result to a taxpayer's income-producing property from a failure to defeat the claim . . .." 372 U.S. at 48, 83 S.Ct. at 629 (emphasis in original).

In dictum the Court rejected deductibility to the business entity itself.

Had this respondent taxpayer conducted his automobile-dealer business as a sole

proprietorship, rather than in the corporate form, and claimed a deduction under § 23(a)(1), the potential impact of his wife's claims would have been no different than in the present situation. (Footnote omitted.)

372 U.S. at 49, 83 S.Ct. at 629.

Appellants' position that *Gilmore* is inapplicable rests upon three points: the state court ordered payment by the corporations; Ardith and others "conspired" to take control of the business entities so that the corporations, in the words of the state judge "were fighting for their corporate lives;" and the corporations were involuntary parties to the litigation.

■ The first argument is disposed of easily. Such an order does not establish the deductibility of the payments.

[T]he fact that a payment is imposed compulsorily upon a taxpayer does not in and of itself make that payment an ordinary and necessary expense within the meaning of § 162(a) of the 1954 Code.

*Commissioner v. Lincoln Savings & Loan Ass'n*, 403 U.S. 345, 359, 91 S.Ct. 1893, 1901, 29 L.Ed.2d 519 (1971). *See also Woolrich Woolen Mills v. United States*, 289 F.2d 444 (3d Cir. 1961). Mere obligation to pay, whether by court order or contract, does not obviate the need to measure the expenditures against the requirements of section 162 of the Internal Revenue Code.

In order to analyze the effect of the second and third contentions it is necessary to look to the origin of the claims involving the corporations. The *Gilmore* "origin of the claim" test was reaffirmed in *Woodward v. Comm'r*, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970). Since the wife was not seeking, nor could she receive, a property settlement or divorce from the corporations, the litigation must be divided into two parts—one being the divorce action against her husband and the attendant struggle for control of assets, and the other being the action directed against the corporations. The origin test must be applied separately to each part.

There is no doubt most of the expenditures here arose directly out of the divorce action. If a conspiracy to control the companies existed, it was only an attempt to control the Dolese assets.

An analogy might be drawn between the instant case and those involving proxy fights. Proxy fights generally originate in disputes over company policy, when each of two competing management teams seeks to convince the shareholder-owners to let their group operate the company. Proxy fight expenses paid by a corporation are deductible under IRC § 162 unless "made primarily for the benefit of individuals rather than in connection with questions of corporate policy." Rev.Rul. 67–1, 1967–1 Cum.Bull. 28. *See also Locke Mfg. Co. v. United States*, 237 F.Supp. 80 (D.Conn.1964).

In this appeal the record is thirteen volumes, consisting mostly of affidavits, documents and depositions offered by appellants. There is no evidence in that record of any dispute over management policy, only of thrust and counterthrust to gain advantage over the preservation or division of the Dolese property. The control claim remains, therefore, one whose origin was personal in nature.

Appellants' third argument, based upon the presence of the corporations as involuntary parties to the litigation, restrained by order from undertaking certain actions without permission of the court, presents a distinction from *Gilmore* which we believe is significant. As to the corporations *Gilmore* is presented in reverse. In *Gilmore* the suit was a divorce against the husband, with the potential effect of depleting the husband's corporate assets. Here a portion of the suit is against the corporation to compel preservation of the corporate assets, with the potential effect of increasing the wife's property settlement under the divorce.

■ Once the corporation was inhibited from the conduct of profit-making activities by fear of violating the court order the costs of obtaining clarification and relief would seem to originate in its business activities. Therefore, to the extent a corpora-

tion incurred legal expenses in preparing pleadings required to be filed in this litigation, in obtaining permission to settle a lawsuit previously filed against it in another state or to make an investment in a rock quarry, or the like, the origin of those claims is in the profit-making activities of the corporation and the expenses are deductible. While it is a closer case, the same is true of the motion filed on September 7, 1967, to remove Roger from management. The state judge perceived this as a request for a receiver. Arguably this, too, was a part of the battle for personal assets within the rule of *Knight-Campbell Music Co. v. Comm'r*, 155 F.2d 837 (10th Cir. 1946). *Cf. Tressler v. Comm'r*, 228 F.2d 356 (9th Cir. 1955) (receivership litigation expenses on personal return). But the motion asserted incapacity of Roger and mismanagement, and did not simply ask for preservation of assets. The courts have allowed corporations to deduct costs of resisting actions that may be detrimental to or interfere in their business activities. *E. g., General Pencil Co.*, 3 T.C.M. (CCH) 603 (1944) (close corporation). *Cf. Commissioner v. Heininger*, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943) (proprietorship).

On the other hand, the appraisals here made of the companies' assets, although paid by the corporations and useful to them in the future, obviously had their origin in the divorce case and were done to provide a valuation of the marital property. Similarly, even if evidence of the wife's infidelities helped convince the court she should not prevail in her attempted takeover of management, that information was acquired long before her motion was filed and its origin and principal usefulness was in the divorce proceedings.

Because some of the expenses paid by the corporations were obviously deductible under the above analysis, a remand is required for a determination of those amounts.

## II

■ To the extent expenditures by the corporations were deductible expenses under our analysis above, these amounts are not dividends to Roger, of course. The mere fact expenditures were not deductible to the corporation does not make them automatically taxable to Roger. They must represent some direct benefit to him. *Palo Alto Town & Country Village, Inc. v. Comm'r*, 565 F.2d 1388 (9th Cir. 1977). We hold that under the undisputed facts of this case, the expenditures for litigation expenses not deductible to the corporation were constructive dividends to Roger.

■ Under the tax law any distribution by a corporation to its shareholders, to the extent of its earnings and profits, is a dividend, unless the distribution is within one of the exceptions of the Code. IRC §§ 316(a), 301(c)(1). None of the statutory exceptions, which treat principally stock redemptions, is applicable here. It is not necessary that the corporations intended a dividend, *Crosby v. United States*, 496 F.2d 1384 (5th Cir. 1974), or that the distributions be termed dividends or recorded as such.

■ The only fact that gave us pause was the court order requiring payment by the corporations of these items. The state trial court had power under state law to impose the payment obligations upon the corporation, but such a court cannot determine the federal income tax consequences in an action to which the United States was not a party. *Commissioner v. Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). Federal law must determine the federal tax consequences of a distribution by the corporation.

■ While the distributions were not made directly to Roger, except for reimbursement of his payments made prior to 1968, they conferred an economic benefit upon him without expectation of repayment. *See Wortham Machinery Co. v. United States*, 521 F.2d 160, 164 (10th Cir. 1975). Despite the state court order requiring the corporations to pay, these were personal expenses of Roger for professional services and other expenses of the divorce suit. The corporation being the legal obligee does not eliminate the constructive divi-

dend feature. In *United States v. Smith*, 418 F.2d 589 (5th Cir. 1969), the court in considering an analogous situation said,

> The district judge held that the Smiths received no economic benefit because the state court judgment placed no obligation of payment upon the brothers. The district judge found that the Smiths were not personally obligated to pay Ritenour because the state judgment entitled Ritenour to receive 25 per cent of whatever was left from the liquidation, and because Ritenour had no right to go against the Smiths individually. . . .
>
> These determinations overlooked the realities present and took too narrow a view of what constitutes economic benefit. Assuming that the district court correctly determined that the Smiths were not obligated by the judgment, the Smiths directly benefitted by the corporate payment. If for example the brothers desired the settlement and if the corporation had not made the payment, either the Smiths as partners in the landholding partnership or as individuals would have had to made the payment to keep the property from being sold under the hammer. The corporation payment benefitted the Smiths because they were thereby relieved from making payment themselves.

*Id.* at 594.

### III

■ The final issue is whether the "accounts receivable" of the corporations representing many individual payments of personal debts of Roger Dolese are loans or constructive dividends to him. This is normally a fact issue, to be determined after trial. *B. Forman Co. v. Comm'r*, 453 F.2d 1144, 1159 (2d Cir. 1972). But when there is no dispute in the evidence, it is a question of law whether the facts add up to debt or dividend. *Alterman Foods, Inc. v. United States*, 505 F.2d 873, 876 (5th Cir. 1974). The courts have looked to a number of test factors in deciding the question. Such factors have included the control of the corporation, its dividend history, the size of the advances, whether the corporation imposed

a ceiling on the amounts that might be borrowed, whether there were definite maturity dates, attempts to force repayment, intention or attempts to repay, and the shareholder's ability to liquidate the loan. *Id.* at n. 6.

■ Appellants argue that acceptance by the Internal Revenue Service of the accounts as loans in its 1964 tax audit establishes their status. That was a compromise agreement, however; the IRS was arguing essentially inconsistent positions, seeking both constructive dividend treatment and the unreasonable accumulation of earnings penalty under IRC § 531. The closing agreement whereby the parties accepted the unreasonable accumulations theory is not binding on later years. *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953). In addition, compromise agreements are not admissible in evidence. Fed.R.Evid. 408; *Bratt v. Western Airlines, Inc.*, 169 F.2d 214, 217 (10th Cir.), *cert. denied*, 335 U.S. 886, 69 S.Ct. 239, 93 L.Ed. 425 (1948).

In contending the advances were loans, appellants also emphasized that notes were given for the advances at issue here, interest was paid, some payments were made on the principal, and the shareholder had a balance sheet strong enough to obtain a bank loan sufficient to pay off the entire sum. Therefore, they argue that at least a fact issue exists, requiring reversal of the grant of summary judgment. We do not agree.

Some loan factors are present. Cutting strongly the other way, however, is the size of the total advancements as compared to Roger's income and assets not tied up in the corporations. Interest alone, at the relatively nominal four percent rate of the notes, on the $1,817,133 owed March 31, 1968, exceeds $72,000 per year. Roger's gross income was approximately $125,000 per year throughout this period. His own balance sheets demonstrate an inability to liquidate the debt without sale or liquidation of one of the three corporations or borrowing from a bank, which loan in turn

would have to be repaid by liquidating one of the corporations or receiving greatly increased dividends. Had Roger borrowed this large sum in one or two lump amounts after developing a plan to sell or liquidate Dolese Bros. Co., with the specific intent to repay from the proceeds of the disposition, a true loan situation might have existed. But the timing and the pattern of the advances in the instant case cannot be ignored.

Perhaps in recognition of human nature, the courts have been liberal in cases of shareholder borrowing from controlled corporations. They have tolerated channeling particular types of personal transactions through the corporation. See *Ravano v. Comm'r*, 26 T.C.M. (CCH) 793 (1967); *Sharp v. Comm'r*, 12 T.C.M. (CCH) 836 (1953). They have even approved payment of personal living expenses, but in significantly smaller sums and under different circumstances. *Wentworth v. Comm'r*, 25 T.C.M. (CCH) 869 (1966); *Thistlethwaite v. Comm'r*, 25 T.C.M. (CCH) 193 (1966). But whereas withdrawal of reasonable amounts are countenanced as a loan if other loan factors are present, excessive and continuous diversion of corporate funds into the controlling shareholder's pocket takes on a different character. There is a principle of too much; phrased colloquially, when a pig becomes a hog it is slaughtered.

█ The federal tax law recognizes the right of even a single owner to do business in the corporate form and be taxed under corporate rules. See *United States v. Empey*, 406 F.2d 157 (10th Cir. 1969). But gross abuse of the formal distinction between operating as a corporation and as a proprietorship by ignoring formalities and commingling personal and corporate funds, will require allocation of income and taxation as if there were no corporation. See *Epperson v. United States*, 74–1 U.S.T.C. ¶ 9284 (E.D.Wis.1973), aff'd, 490 F.2d 98 (7th Cir. 1974); *Pacific Development, Inc. v. United States*, 79–1 U.S.T.C. ¶ 9138 (D.D.C. 1979).

The choice of the corporate form for doing business confers certain advantages

taxwise, principally a lower maximum tax bracket on income, IRC § 11, and better fringe benefits. See IRC §§ 79, 101, 105, 106, 404. The choice also carries with it certain tax disadvantages. Income taxed once to the corporation is taxed again as a dividend or capital gain when it comes out to the shareholder for his or her personal use. IRC §§ 316(a), 301, 302. This double taxation is escaped only for redemptions or liquidations after death, by operation of the step-up in basis. IRC § 1014.

If a sole owner of a corporation could have his living expenses paid by the corporation as a loan, using his control of the entity to postpone repayment indefinitely, a loophole would be created. The double taxation penalty of the corporate form might be avoided entirely by liquidation or sale after death. Why then would a controlled corporation ever pay dividends, except as required to avoid IRC § 531 penalties? We think that this type of bypass around the double tax structure is inconsistent with Congress' intent in the enactment of the income tax laws.

█ Wherever the line might be drawn on permissible personal loans from a corporation to its shareholders, the instant case exceeds it. We have no difficulty holding that the net advances exceeding $150,000 in each of the years at issue here, are constructive dividends to Roger Dolese.

The judgment of the trial court is affirmed in part, reversed in part. The cause is remanded for further proceedings consistent with the views set forth herein.

On Petition for Rehearing

PER CURIAM.

█ The petition for rehearing is denied. On the issue of loans versus dividends, intent to repay and expectation of repayment are significant factors not susceptible of proof by direct, objective evidence. We realize that "great circumspection is required where summary judgment is sought on an issue involving state of mind." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir. 1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

The determination of mental state in the instant case requires that inferences be drawn from the affidavits, exhibits and other documentary material found in the record. These inferences must be viewed in the light most favorable to the party against whom summary judgment was entered. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). We recognize and apply this principle. On the record presented, we conclude that no permissible inference of either an intent to repay or an expectation of repayment can be drawn. Hence, summary judgment on the loans versus dividends issue was proper.

The petition for rehearing having been denied by the panel to whom the cases were argued and submitted, and no member of the panel nor judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 35, Federal Rules of Appellate Procedure, the suggestion for rehearing en banc is denied.

HOLLOWAY, Circuit Judge, did not participate in the consideration or disposition of the suggestion for rehearing en banc.