KOPP'S COMPANY, INC., Appellant,

v.

UNITED STATES of America, Appellee.

No. 79-1405.

United States Court of Appeals,
Fourth Circuit.

Argued June 6, 1980.

Decided Oct. 23, 1980.

Shale D. Stiller, Baltimore, Md. (Jerome D. Carr, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellant.

Stephen J. Gray, Tax Div., Dept. of Justice (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Robert A. Bernstein, Tax Div., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WIDENER and ERVIN, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Appellant, Kopp's Co., Inc. (the Company), contends that the trial court erred in disallowing the Company's deduction, as ordinary and necessary business expenses under Section 162(a) of the Internal Revenue Code, of the cost of settlement of a tort action and related legal fees. A refund was sought of $28,935.67, representing income taxes of $25,472.00 together with interest thereon of $3,463.67 which it had paid after the IRS rejected the deductions on its Fed-

---

eral income tax return for the year ending March 31, 1973. Tried non–jury in the United States District Court for the District of Maryland, final judgment with opinion denying the refund was passed and the Company appeals. We reverse.

This case was heard on a stipulation of facts with supporting exhibits, and on briefs and oral arguments. As recited in the trial court's opinion and now summarized, the facts are these. The Company is a Maryland corporation engaged in the lumber and building supply business. Its sole shareholders are Earl and Jean Kopp, who also serve as officers and directors. Their son Wayne has been employed by the Company since January, 1963, except for the period of 24 months from September, 1966, to September, 1968, spent in military service.

On November 17, 1967, while at home on leave and making personal and permissive use of a Company–owned car, Wayne was in an accident in Maryland which rendered Warren T. Danner, the driver of the other vehicle involved, a quadraplegic. In the previous five years, Wayne had been convicted of speeding 10 times and had been a party to 3 minor accidents. His license had been suspended briefly in Maryland and had been revoked in Virginia. Earl Kopp was aware of his son's driving record.

At the time of the accident, the Company and Kopp carried automobile liability policies to the face value of $100,000. Wayne and Jean, his mother, had no such insurance; Wayne had no assets. Earl's assets, aside from his interest in the Company, totalled $75,000. The Company's book value in 1970 approximated $250,000.

Danner, the victim of the accident, filed suit in 1969 against the Company, Earl, Jean and Wayne Kopp in Maryland for damages of $4.2 million. The institution of the suit led the Company's bank to freeze its credit line and to demand security upon an unsecured note; major suppliers of the Company similarly expressed concern, and the Company's financial statement thereafter carried a notation of this contingent liability.

To relieve its financial stress, the Company reached an out–of–court settlement with Danner, under the terms of which the Company's liability insurer was to pay Danner $102,000 and the Company was to pay Danner $50,000 borrowed from the Company's bank. In addition, the Company incurred $3,068 in legal fees. The compromise was effectuated in every particular prior to March 31, 1973.

In its Federal income tax return for the taxable year ending March 31, 1973, the Company deducted the $50,000 settlement and the $3,068 legal fee as ordinary and necessary business expenses under Section 162 of the Code. The IRS disallowed the deduction, assessing an income tax deficiency of $28,935.67, including interest. The Company paid the deficiency, filed for a refund and subsequently instituted this action.

Appellant argues that the payments made in satisfaction of the Danner suit and the related legal fees are properly deductible under Section 162(a) because they were made in order to protect the credit standing and financial durability of the Company. In rejecting this premise the District Court looked to *United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). We conclude, however, that the "origin of the claim" doctrine established there should not bar deductibility in this case.

In *Gilmore*, the Supreme Court stated:

[T]he origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal" and hence whether it is deductible or not . . . .

372 U.S. at 49, 83 S.Ct. at 629.

That decision dealt with the expense incurred by an individual taxpayer in defending against his wife's suit for divorce. The expense was declared non–deductible, even though, if his wife's property claims had succeeded, the taxpayer might have lost his controlling stock interests and official posi-

tions in the corporations from which he derived most of his income. In refusing the deduction, the Court concluded that "the wife's claims stemmed entirely from the marital relationship, and not, under any tenable view of things, from income–producing activity." *Id.* at 51, 83 S.Ct. at 631.

The claim with respect to which the Company incurred the expenses it seeks to deduct here, however, was not merely a personal claim only tangentially threatening to corporate assets. On the contrary, and importantly, Danner named the Company as a party defendant to his suit, thereby directly bringing the business into the litigation and jeopardizing its assets. Like the Court in *Dolese v. United States*, 605 F.2d 1146, 1151 (10th Cir. 1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980), we see the Company's *direct* exposure to the risk of a monetary judgment significant in distinguishing the instant litigation from that of *Gilmore*.

The factual stipulation before us reveals that the Company was advised by its general counsel that, at trial, it likely would be found liable for negligent entrustment of the company car to Wayne. *See Maryland v. O'Brien*, 140 F.Supp. 306 (D.Md.1956); *Curley v. General Valet Service, Inc.*, 270 Md. 248, 311 A.2d 231 (1973); *Snowhite v. State*, 243 Md. 291, 221 A.2d 342 (1966); *Rounds v. Phillips*, 168 Md. 120, 177 A. 174 (1935). The Company, therefore, was confronted with more than a remote threat to its assets or operations arising from a costly judgment against Wayne; it incurred the expense at issue to avert direct liability under a claim alleging that the Company itself acted negligently. in permitting Wayne to operate its car. The outlay made by Kopp's Co., Inc., in resolving the Danner suit thus conforms with the guidelines for deductibility put forward in *Gilmore*.

We set aside the judgment on appeal. Reversed.

ERVIN, Circuit Judge, dissenting:

Because I am convinced that the amounts paid in settlement of the tort action against Kopp's Company, Inc. (hereafter "the corporation") and for legal fees incurred in connection with that litigation can in no way be characterized as business expenses within the meaning of § 162(a) of the Internal Revenue Code, I respectfully dissent.

There are two distinct inquiries to address in determining the deductibility of an expense under § 162(a). First, it must be ascertained whether the expense is personal or business related. If it is determined that the expense is business related, then the second inquiry is whether the expenditure is ordinary and necessary to the carrying on of a trade or business. Because I believe that the expenses were personal in nature, I find no need to address the second inquiry of whether the expenses were ordinary and necessary to carrying on the Kopp business.[1]

The test for determining whether an expense qualifies as a business expenditure, as compared to a personal expense, was set forth by the Supreme Court in *United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). The test enunciated in *Gilmore* looks to the "origin and character of the claim with respect to which an expense was incurred," and not to the consequences that may result to a taxpayer's income producing property if the claim is not defeated. 372 U.S. at 49, 83 S.Ct. at 629. In order for litigation or settlement expenses to be deductible under the *Gilmore* test, they must have accrued in the defense of a suit that is connected directly with or that resulted proximately from the taxpayer's trade or business. *See Kornhauser v.*

---

1. The leading case on whether an expenditure qualifies as "ordinary and necessary" to the business is *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). Although some cases seemingly merge the "personal versus business expense" inquiry with the issue of whether an expense is "ordinary and necessary" to the business, *see, e. g., Dolese v. Unit-*

*ed States*, 605 F.2d 1146 (10th Cir. 1979), I think the distinction is necessary to clarify the issue in a case brought under § 162(a). If the expenditure is not a business expense in the first instance, it is fruitless to inquire into whether it is ordinary and necessary to the business.

*United States,* 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505 (1928). Thus, for a deduction to be allowed under § 162(a) the transaction out of which the claim arose must have resulted from the carrying out of company business.

I am not convinced that the settlement and litigation expenses in this case constitute business expenses. The transaction out of which the claim arose was that of Mr. Kopp (hereafter "Earl") lending a car to his son for the son's personal use. The troublesome factor in this case is that Earl, who was also president and principal shareholder of a closely held corporation, Kopp's Co., Inc., lent his son a company car. If Earl had owned no corporation and had lent his own automobile to his son for the son's personal use, no litigation costs or settlement expenses would have been deductible by him, by his wife, or by his son. I cannot see how Earl's status as president of the closely held corporation transforms the entrustment of the car to the son into a corporate act. Clearly, if Earl, as president, is viewed as an agent of the corporation, he was acting outside the scope of his agency in making a personal loan of the car for purposes totally unrelated to the business. A corporation is not liable for the unauthorized acts of its agents. In conjunction with his effort to impute his own tort liability to the corporation, Earl seeks tax benefits for his wholly owned corporation which are incompatible with the purposes of § 162(a) of the Code.

The majority proceeds on the theory that, because the corporation as a party defendant incurred the litigation and settlement expenses to avert "direct liability," it met *Gilmore's* guidelines. This reliance on *Gilmore* is misplaced because *Gilmore* requires that the origin of the claim giving rise to the threat of liability must be connected with the taxpayer's profit–seeking activities. 372 U.S. at 48, 83 S.Ct. at 622. Thus, a threat to corporate assets even if real and direct, is deductible only if the origin of the threat is business related. In this case, Danner's claim against the corporation stemmed entirely from the familial relation between father and son, and not from any income producing activity of the corporation. The expenses under review were incurred as a result of Earl's personal activities rather than as a result of his business pursuits as an officer of the corporation.

The corporation seeks to distinguish *Gilmore* and to stress *Dolese v. United States,* 605 F.2d 1146 (10th Cir. 1979) as controlling. It should be noted, however, that in *Dolese* the deductions were limited to legal fees expended in freeing the corporations from the restrictions of a restraining order. As the court points out:

> Once the corporation was inhibited from the conduct of profit–making activities by fear of violating the court order the costs of obtaining clarification and relief would seem to originate in its business activities. Therefore, to the extent a corporation incurred legal expenses in preparing pleadings required to be filed in this litigation, in obtaining permission to settle a lawsuit previously filed against it in another state or to make an investment in a rock quarry, or the like, the *origin* of those claims is in the profit–making activities of the corporation and the expenses are deductible. 605 F.2d at 1151–52 (emphasis added).

While an argument could be made that the legal expenses for preparing pleadings required to be filed in this case on behalf of the corporation are deductible, I reject the idea that the total amount of the settlement and all of the legal costs incurred in defending Earl, his wife Jean, and their son Wayne, and the corporation are deductible as expenses incurred in carrying on any trade or business of the corporation.[2]

I would affirm the district court's denial of the refund.

2. It should be noted that Earl had personal assets with a value of less than $75,000.00. In addition, he owned 7,599 of the 7,600 outstanding shares of stock in the corporation which had a book value of $250,000.00. Not one penny was contributed by Earl, Wayne, or Jean to the settlement or to the payment of legal fees.