T.C. Memo. 1998-177


UNITED STATES TAX COURT


LIBERTY VENDING, INCORPORATED, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JOHN POULOS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 23958-96, 23959-96.    Filed May 13, 1998.


<u>Karl J. Smith</u> and <u>Joel S. Gilbert</u>, for petitioners.

<u>Donna C. Hansberry</u> and <u>Victoria S. Crosley</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  Respondent determined the following
deficiencies in petitioners' Federal income taxes:

<u>Liberty Vending, Inc., docket No. 23958-96</u>

| <u>Year</u> | <u>Deficiency</u> |

| 1991 | $2,272 |
| 1993 | 3,750 |

John Poulos, docket No. 23959-96

| Year | Deficiency |
| --- | --- |
| 1991 | $18,842 |
| 1992 | 803 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issue for decision is whether petitioners are entitled to deduct amounts paid for legal fees. We hold that Liberty Vending, Inc., may not and that John Poulos may to the extent provided below.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time petitioners filed their petitions, Liberty Vending's principal place of business and John Poulos' residence were in Palatine, Illinois.

John Poulos was the sole shareholder and operator of Galaxy, Inc. (Galaxy), a subchapter S corporation, and Liberty Vending, Inc. (Liberty), a subchapter C corporation. Galaxy and Liberty operated video game arcades and, on a weekly basis, collected receipts from the video games, remitted a portion of such receipts to the games' manufacturers, and notified the manufacturers how often each game was used. Galaxy had four employees, and Liberty had two employees.

In June of 1991, Mr. Poulos experienced heart problems and was hospitalized for 2 or 3 days.  While Mr. Poulos was in the hospital, Mrs. Poulos filed for divorce; obtained a temporary restraining order against him; and obtained an ex parte order of protection that gave her emergency possession of Liberty and Galaxy and placed petitioners' bank accounts in escrow at American National Bank (ANB) under the supervision of the Circuit Court of Cook County, Illinois, Domestic Relations Division.  Mrs. Poulos and her boyfriend then went to Galaxy's and Liberty's place of business, fired all of the employees, took large quantities of cash and equipment, and removed the corporations' books and records.

Mr. Poulos learned of his wife's actions while in the hospital.  After the hospital released him, he attempted to enter the businesses, but discovered that the locks had been changed.  To regain possession of his businesses, Mr. Poulos retained the services of two law firms:  Greenburg & Hermann (Greenburg) and Schiller, DuCanto and Fleck (Schiller).  Mr. Poulos' corporate attorney, George Ritsos, also assisted in the matter.  On June 20, 1991, Mr. Poulos' attorneys filed a motion to dissolve the order of protection and the temporary restraining order.

While this motion was pending, Mr. Poulos received notices of nonpayment from Galaxy's and Liberty's creditors.  In

addition, video game manufacturers notified Mr. Poulos that his corporations were not fulfilling their service obligations, and therefore, contracts with his companies would be canceled if he could not rectify this problem.  Payments from the ANB escrow account to Liberty's and Galaxy's creditors could not be made without a court order, and Mr. Poulos had no other funds with which to make these payments.  As a result, Mr. Poulos filed a motion with the court to order such payments.

In November of 1991, the court issued an order giving Mr. Poulos possession of Liberty and Galaxy.  Mr. Poulos and his attorneys continued their attempts to regain possession of the corporate assets that had been taken by Mrs. Poulos and her boyfriend.  In addition, they also represented Mr. Poulos in his divorce action with Mrs. Poulos.

The following table delineates legal expenses paid by Galaxy in 1991 and Mr. Poulos in 1992:

|            | 1991      | 1992     |
| ---------- | --------- | -------- |
| Greenburg  | $35,000   | $3,000   |
| Schiller   | 25,000    | 22,000   |
| Mr. Ritsos | 5,000     | 2,000    |
|            | 65,000    | 27,000   |

Approximately 60 percent of Schiller's and 70 percent of Greenburg's fees related to the services performed on behalf of Galaxy.

On their respective income tax returns, Liberty deducted legal fees of $15,150 for 1991 and $25,000 for 1993, and Galaxy

deducted legal fees of $121,200 for 1991 and $25,000 for 1992. Because Galaxy was a S corporation, the latter deductions passed through to Mr. Poulos' tax returns for the years in issue. Respondent disallowed the deductions.

OPINION

Petitioners contend that Liberty and Galaxy are entitled to deduct as ordinary and necessary business expenses the portion of the legal fees attributable to regaining possession of the corporations. See sec. 162(a). Petitioners further contend that Mr. Poulos may deduct such fees because they were incurred for the management, conservation, or maintenance of property held for the production of income. See sec. 212(2). Respondent contends that the legal expenses relate to Mr. Poulos' divorce proceeding and, therefore, are personal expenses that should be disallowed. See sec. 262(a).

Petitioners' legal expenses are deductible if the origin of the claim arose from their profit seeking, rather than Mr. Poulos' personal, activities. See United States v. Gilmore, 372 U.S. 39, 48 (1963). Mr. Poulos' legal fees were incurred for the purpose of establishing his right to possession of, or participation in the income from, the corporations, and therefore, such expenses arose from Mr. Poulos' profit-seeking

activities.  See, e.g., <u>Hahn v, Commissioner</u>, T.C. Memo. 1976-113 (allowing a deduction for legal fees relating to obtaining possession of, and participation of income from, a business already owned by the taxpayer).  While the protective order was in place, employees were fired, the corporations' creditors were not paid, and services were not performed.  In addition, the corporations could not pay creditors without the divorce court's permission.  Thus, the corporations' profit-seeking activities were curtailed.  See, e.g., <u>Dolese v. United States</u>, 605 F.2d 1146, 1152 (10th Cir. 1979) (holding that legal expenses of a corporation arising out of a divorce proceeding between the shareholder-owner and his wife were deductible, to the extent that the costs were incurred to resist actions that interfered with the business activities of the corporation).  Accordingly, Mr. Poulos is entitled to deductions, including pass-through deductions, for the portion of the legal fees relating to the protective order (i.e., $44,500 for 1991 and $17,300 for 1992). Liberty, however, is not entitled to deduct any of its alleged legal expenses because it has not established that it paid such expenses.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.