# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60299

Consolidated with 18-60304

JAMES A. CAVANAUGH, JR.,

Petitioner - Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**
March 29, 2019

Lyle W. Cayce
Clerk

Appeals from a Decision of the
United States Tax Court
T.C. No. 30825-09
T.C. No. 29194-11

Before CLEMENT, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:*

This case requires us to answer the question whether a settlement payment to avoid liability arising from the death of a sole shareholder's girlfriend is a deductible business expense for his S corporation. The IRS and Tax Court have said it is not. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60299

**FACTS AND PROCEEDINGS**

James Cavanaugh, Jr. is the CEO and sole shareholder of Jani-King International, Inc., a commercial cleaning franchisor operating as an S corporation. In November 2002, Cavanaugh went on a Thanksgiving vacation to the Caribbean island of St. Maarten, where he owned a residence. With him were his girlfriend, Colony Anne (Claire) Robinson, and Jani-King employees Ronald Walker (his bodyguard) and Erika Fortner (his employee and former girlfriend). On November 28, 2002, Claire died at the residence, likely of a cocaine overdose.

Claire's mother Linda Robinson sued Cavanaugh and Jani-King, alleging that Claire's death was caused by the Jani-King employees acting in the course and scope of their employment. Robinson alleged that Cavanaugh, Walker, and Fortner facilitated Claire's access to and ingestion of cocaine, causing her death.

After some discovery, Jani-King's board of directors met to discuss the suit. Cavanaugh explained to the board that he believed the claims were frivolous but was willing to personally contribute his own defense costs, estimated to be $250,000. Jani-King's corporate counsel explained to the board that Robinson would likely not prevail in her suit, but a negative outcome was possible. They acknowledged the "substantial possibility of a negative impact on the company's relationship with its franchisees and the company's business" that could result from negative publicity arising from the suit. Jani-King's counsel ultimately recommended that the company settle, and the board authorized a settlement payment of up to $5 million.

The parties settled the lawsuit for $2.3 million to be paid over the course of two years. Cavanaugh paid $250,000 toward the settlement, Jani-King the remainder. Jani-King reimbursed Cavanaugh for his portion of the settlement. Jani-King then deducted its settlement payment, the reimbursement payment,

2

and its related legal expenses as ordinary and necessary business expenses. Because Jani-King is an S corporation, its deductions flow through to and are reflected on Cavanaugh's personal tax returns.

The IRS disallowed the claimed deductions. And despite having paid $2.3 million ostensibly to avoid protracted litigation and the attendant negative publicity, Cavanaugh decided to fight for the deductions, contesting the IRS's determination that the expenses did not qualify as ordinary and necessary business expenses.

The Tax Court eloquently articulated the parties' basic dispute:

> From Cavanaugh's perspective, it is an unfortunate fact of business life that corporations and prominent individuals get sued, sometimes on dubious facts and theories of liability. Settling such suits may be distasteful, but even a small chance of an enormous payout may justify a deal that protects assets from the uncertainty of litigation and protects a business reputation from scandal.
> The Commissioner has a different view--he argues that however jumbled and wrinkly the legal topography created by the collision of Code, regulations, and caselaw may sometimes seem, it cannot possibly hide a crevice dark enough to successfully shelter an argument that the price paid for the death of the boss's girlfriend is a deductible corporate business expense.

The Tax Court held that Jani-King could not deduct the settlement payment, reimbursement payment, or related legal expenses. The court first held that *United States v. Gilmore*, 372 U.S. 39 (1963), controls. In *Gilmore*, the Supreme Court held that when determining the deductibility of litigation expenses as business expenses, "the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test." 372 U.S. at 49. If the claim "arises in connection with the taxpayer's profit-

No. 18-60299

seeking activities," related expenses may properly be characterized as a business expense rather than a personal expense. *Id.* at 48.

The Tax Court found that Cavanaugh did not show that Robinson's suit arose in connection with Jani-King's profit-seeking activities. Therefore, Jani-King's settlement payment and related legal expenses were not deductible as ordinary and necessary business expenses. The court also found that Jani-King was not obligated to reimburse Cavanaugh, Cavanaugh was not unable to cover his part of the settlement, and the reimbursement was not an ordinary and necessary business expense, so the reimbursement payment was not deductible. Again, Cavanaugh appealed.

## STANDARDS OF REVIEW

The Tax Court's legal conclusions are reviewed de novo and its factual findings for clear error. *Harris v. Comm'r of Internal Revenue*, 16 F.3d 75, 81 (5th Cir. 1994). "A factual finding is clearly erroneous only if, based on the entirety of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *United States v. Cordova-Soto*, 804 F.3d 714, 718 (5th Cir. 2015).

## DISCUSSION

I.  **Disallowance of Jani-King's deduction for its settlement payment and related legal expenses**

*A. Applicability of Gilmore*

Cavanaugh first argues that *Gilmore* is inapposite because it does not address a situation where a corporation is directly named in the underlying suit. Relying primarily on *Kopp's Co., Inc. v. United States*, 636 F.2d 59 (4th Cir. 1980), Cavanaugh argues that the court must give significant weight to a corporation's direct exposure to a monetary judgment, rather than examining the origin of the claim. In response, the Commissioner contends that *Gilmore*

4

No. 18-60299

controls even when corporations are named as defendants in the underlying litigation.

Section 162 of the Internal Revenue Code "permits an individual or corporate taxpayer to deduct all ordinary and necessary expenses paid or incurred in carrying on a trade or business." *Estate of Meade v. Comm'r of Internal Revenue*, 489 F.2d 161, 164 (5th Cir. 1974). When determining whether litigation expenses were "incurred in carrying on a trade or business,"[1] this court generally looks to the origin of the claim from which the expenses arose. *Id.* at 165–66 (relying on *Gilmore*); *see also Marcello v. Comm'r of Internal Revenue*, 380 F.2d 499, 504–05 (5th Cir. 1967). "Legal expenses do not become deductible merely because they are paid for services which relieve a taxpayer of liability." *Lykes v. United States*, 343 U.S. 118, 125 (1952). Importantly, "[w]hen a taxpayer claims a Section 162(a) deduction, he has the burden to prove that the expense in question has a business origin." *Marcello*, 380 F.2d at 504.

We decline Cavanaugh's invitation to follow the scarce out-of-circuit cases since *Gilmore* that have distinguished its origin-of-the-claim test when the taxpayer corporation is named in the underlying suit. *See Kopp's*, 636 F.2d at 60–61; *Dolese v. United States*, 605 F.2d 1146 (10th Cir. 1979). Those cases directly conflict with *Gilmore*, which is binding on this court. Each concentrates on the consequences of the litigation rather than the underlying claim's origin. *See Kopp's*, 636 F.2d at 61 (focusing on the company's "direct exposure to the risk of a monetary judgment"); *Dolese*, 605 F.2d at 1151–52 (focusing on the restraining order that arose out of a divorce action). This circuit has repeatedly confirmed that it follows *Gilmore*, which has not otherwise been confined to its facts. *See Meade*, 489 F.2d at 164; *Marcello*, 380

---

[1] The parties do not dispute that the expenses at issue are ordinary and necessary.

5

No. 18-60299

F.2d at 504–05; *see also Northwestern Indiana Telephone Co. v. Comm'r of Internal Revenue (NITCO)*, 127 F.3d 643 (7th Cir. 1997) (applying *Gilmore* even though the taxpayer corporation was directly named in the underlying litigation).[2]

We are bound by *Gilmore* and must apply its origin-of-the-claim test. Simply being named in the Robinson suit is insufficient to prove that Jani-King's expenses are deductible business expenses.

### B. Origin of the Claim

Under *Gilmore*, "[w]e must identify the claim that gave rise to the legal fees whose deductibility is here in question, and then determine whether the claim was proximately related to the trade or business of" Jani-King. *Peters, Gamm, West & Vincent, Inc. v. Comm'r of Internal Revenue*, 71 T.C.M. (CCH) 2789, 1996 WL 182545, at *5 (T.C. 1996). This inquiry "does not contemplate a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all the facts." *Id.* (quoting *Boagni v. Comm'r of Internal Revenue*, 59 T.C. 708, 713 (T.C. 1973)).

The Tax Court found that the "claim" was undisputed: the Robinson suit against Cavanaugh and Jani-King. The court further found that the origin of the claim was that Claire was allegedly provided cocaine by Jani-King employees. The court found that providing cocaine does not arise from, further, or use property directly employed in Jani-King's franchising business. This is a finding of fact that is reviewed for clear error. *See Marcello*, 380 F.2d at 505

---

[2] Even were we to follow *Kopp's*, Cavanaugh would not prevail. In the *Kopp's* line of cases, the corporations showed that the litigation directly threatened or inhibited their ability to engage in profit-seeking activities. *See Kopp's*, 636 F.2d at 60; *Dolese*, 605 F.2d at 1149, 1151–52; *Naporano Iron & Metal Co. v. United States*, 6 Cl. Ct. 422, 431 (Cl. Ct. 1984); *see also Comm'r of Internal Revenue v. Heininger*, 320 U.S. 467, 469 (1943) (owner of mail-order false-teeth business was deprived of access to the mails by a fraud order). Cavanaugh made no such showing.

n.16; *Heininger*, 320 U.S. at 475 ("Whether an expenditure is directly related to a business and whether it is ordinary and necessary are doubtless pure questions of fact in most instances.").

Cavanaugh contends that because Jani-King engages only in profit-seeking activities, its employees' actions—alleged to have been within the course and scope of their employment—must have arisen from profit-seeking activities. The Commissioner argues that simply because a corporation's possible liability rests on an activity alleged to have been within the course and scope of employment does not make that activity related to a corporation's profit-seeking activity for the purposes of tax deductibility.

Cavanaugh ignores the "basic principle of examining each activity to ascertain whether its objective was to make a profit." *Synanon Church v. Comm'r of Internal Revenue*, 57 T.C.M. (CCH) 602, 1989 WL 59409, 1989 Tax Ct. Memo LEXIS 270, at *90 (T.C. 1989). Even when the underlying suit includes allegations of employees acting within the course and scope of their employment, the court must determine whether their activities arose from or were connected to the corporation's profit-seeking activity.

Take, for example, the Seventh Circuit's opinion in *NITCO*. NITCO was a closely held, independent telephone company. *NITCO*, 127 F.3d at 645. The primary shareholder's son formed a cable television company, NICATV. *Id.* In the shareholder's attempt to help his son, NITCO paid his salary, NITCO employees "constructed and operated NICATV," NITCO paid NICATV's utility bills, and NITCO wrote off a $100,000 debt from NICATV. *Id.* at 646. One of NICATV's competitors filed a complaint with the FCC alleging NICATV was illegally affiliated with NITCO, which was prohibited from offering cable services. *Id.* at 645. The FCC eventually brought an enforcement action against the companies, and NITCO and the son brought a separate suit alleging

constitutional violations. *Id.* NITCO deducted the attorneys' fees for these actions as business expenses. *Id.* at 645–46.

The Seventh Circuit affirmed the Tax Court's finding that the origin of the claims giving rise to NITCO's legal expenses did not involve its profit-making activities. *Id.* at 646. The court found that NITCO's activities supporting NICATV—including those by employees presumably acting within the course and scope of their employment—were not undertaken with a profit motive. *Id.* Therefore, the court found that the claims "originated with the nonbusiness activity of underwriting" NICATV and affirmed that NITCO's legal expenses were not ordinary and necessary business expenses. *Id.*

Similarly, in *Synanon Church*, the Tax Court examined all the relevant activities undertaken by a formerly nonprofit church to determine whether each constituted a trade or business and was undertaken with a profit motive. 1989 WL 59409, 1989 Tax Ct. Memo LEXIS 270, at *89–102. The Tax Court affirmed the disallowance of deductions for litigation expenses arising from activities it found not to be profit-seeking, even expenses arising from suits alleging that church employees "committed tortious acts" in the course and scope of their employment. *Id.* at *139–40. The court held that Synanon failed to show that the tort claims "arose from, or were proximately related to, any specific business activity." *Id.* at *139.

Cavanaugh does not argue that providing cocaine to Claire was done with a profit-seeking motive. Nor does he argue that the alleged actions arose from or were proximately related to any specific Jani-King business activity. The Tax Court's finding that the Jani-King employees' alleged actions were not profit-seeking is not clearly erroneous.

Cavanaugh also contends that "all expenses incurred in defending against a [non-collusive] suit founded on a theory of respondeat superior would be deductible as a business expense . . . even where . . . the origin of the suit

has no connection to the corporation's profit-seeking activities." He argues that the "nexus with the business *is* the allegation that the employee is acting within the course and scope of his employment."

This is a novel argument, but Cavanaugh marshals no legal support for it. And he runs up against *Gilmore* and the cases just discussed, where courts have affirmed the disallowance of deductions when employees are alleged to have been acting in the course and scope of employment if their actions did not involve the company's profit-making activities. *See NITCO*, 127 F.3d at 646; *Synanon Church*, 1989 WL 59409, 1989 Tax Ct. Memo LEXIS 270, at *139–40; *cf. Cummins Diesel Sales of Or., Inc. v. United States*, 207 F. Supp. 746, 748–79 (D. Or. 1962) (finding that the salary of a nurse hired by a company to care for its principal officer and stockholder was "predominantly personal" and "not chargeable to a corporation as an 'ordinary and necessary' business expense") (cited favorably by *Jack's Maint. Contractors, Inc. v. Comm'r of Internal Revenue*, 703 F.2d 154, 156–57 (5th Cir. 1983)).

Cavanaugh's argument would also have the court ignore all the facts and allegations of the underlying claim and look only at the alleged theory of liability. We must look not only at the allegation that Jani-King employees were acting within the course and scope of their employment, but also at the allegation that they provided cocaine leading to Claire's death. The origin of the claim is the employees' providing cocaine, not their employment by Jani-King. The Tax Court's findings are not clearly erroneous. The settlement payment and related legal fees arose from a claim originating in non-business activity and Jani-King's business-expense deductions were properly disallowed.

## II.    Disallowance of deduction for reimbursement payment

Cavanaugh contends that Jani-King's reimbursement payment to him is deductible because settling the lawsuit was in Jani-King's best interests. He

also argues that the corporation's bylaws make indemnification obligatory, and Jani-King's primary motives for reimbursement were to protect its business and uphold its corporate obligations. The Commissioner responds that Cavanaugh does not contest the Tax Court's interpretation of the bylaws finding that Jani-King was not obligated to make the reimbursement payment. The Commissioner also argues that the record is devoid of evidence showing that Cavanaugh was unable to make the $250,000 payment or that indemnification was necessary to protect Jani-King's business.

### A. Required Payment

A company's payment under an indemnification agreement can be an ordinary and necessary business expense. *See Union Inv. Co. v. Comm'r of Internal Revenue*, 21 T.C. 659, 663 (T.C. 1954). Article 9.01 of Jani-King's bylaws provides for corporate indemnification of:

> any . . . Director, officer or employee . . . against any and all liability and reasonable expense that may be incurred by him in connection with or resulting from any claim . . . in which he may become involved as a party . . . by reason of being or having been such a Director, officer, or employee . . . provided such person acted, in good faith, in what he reasonably believed to be the best interests of the corporation . . . .

Under Article 9.03, if the person is "wholly successful" in the suit, he is entitled to indemnification as a matter of right. Otherwise, indemnification is "at the discretion of the corporation" upon a finding by the board of directors or its counsel that the person met the standards of conduct set forth in Article 9.01.

Although he generally asserts that Jani-King was legally obligated to indemnify him, Cavanaugh does not argue that the requirements of the bylaws' indemnification provision were met. Thus, he has waived the argument that Jani-King was contractually obligated to reimburse him. *See, e.g.*, *Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014) ("A party that asserts an

argument on appeal, but fails to adequately brief it, is deemed to have waived it." (quoting *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010))).

### B. *Voluntary Payment*

Generally, paying another's debt is not an ordinary and necessary business expense. *See Welch v. Helvering*, 290 U.S. 111, 114 (1933). The Tax Court has recognized an exception when such a payment is made to "protect or promote [the taxpayer's] own business." *Lohrke v. Comm'r of Internal Revenue*, 48 T.C. 679, 684–85 (T.C. 1967). When a corporation pays a controlling shareholder's expense, this test "is more likely to be satisfied if the shareholder is unable to pay the expense, thus requiring the corporation to pay the expense in order to protect its own interests." *HIE Holdings, Inc. v. Comm'r of Internal Revenue*, 97 T.C.M. (CCH) 1672, 2009 WL 1586044, at *96 (T.C. 2009); *see also Hood v. Comm'r of Internal Revenue*, 115 T.C. 172, 179 (T.C. 2000). Even if the taxpayer meets the "protect and promote" test, it must also show that the expense is an ordinary and necessary business expense. *Lohrke*, 48 T.C. at 688. This second inquiry is still governed by *Gilmore. See, e.g.*, *Capital Video Corp. v. Comm'r of Internal Revenue*, 311 F.3d 458, 464–65 (1st Cir. 2002).

Cavanaugh argues only that the settlement was necessary to protect Jani-King's business, not that the reimbursement payment was necessary to do so. Nor does he contend that he was unable to make the payment, and the record shows the opposite. Further, as discussed above, the Tax Court's finding that the Robinson suit did not arise in connection with Jani-King's profit-seeking activities is not clearly erroneous. Therefore, Cavanaugh has not shown that the Tax Court's findings regarding Jani-King's reimbursement payment are clearly erroneous. The reimbursement payment is not deductible as a business expense.

### CONCLUSION

For the foregoing reasons, we affirm.