INLAND ASPHALT COMPANY, A CORPORATION, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Inland Asphalt Co. v. Commissioner
Docket Nos. 14283-79, 14284-79, 14285-79.
United States Tax Court
T.C. Memo 1982-463; 1982 Tax Ct. Memo LEXIS 284; 44 T.C.M. (CCH) 765; T.C.M. (RIA) 82463; August 9, 1982. *284 Inland Asphalt elected to terminate its subchapter S election in 1969. Immediately prior to such termination, it made certain distributions to its two shareholders. The shareholders received incorrect advice regarding the tax consequences to them of the distributions. Respondent issued notices of deficiency to the shareholders determining that the distributions had been improperly reported by them on their individual Federal income tax returns for the year 1969. The shareholders never considered filing lawsuits against Inland Asphalt as a result of the incorrect tax advice they had received. Inland Asphalt made payments in settlement of Tax Court cases respecting the liability of its shareholders, for interest resulting from the settlement of the cases, and for professional services in connection with the cases. Held, Inland Asphalt is not entitled to deduct the payments made by its as ordinary and necessary business expenses under section 162. Old Town Corp. v. Commissioner,37 T.C. 845 (1962) distinguished. Held further, The settlement payments made by Inland Asphalt to, or on behalf of, its shareholders are taxable as constructive dividends to *285 the shareholders. Robert A. Kovacevich, for the petitioners. James A. Nelson, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: *286 Respondent determined deficiencies in petitioners' income taxes as follows: Taxable Year
Income Tax
Docket No.
Petitioners
Ending
Deficiency
14283-79
Inland Asphalt
February 28, 1974
$17,509.62
Company, a
February 28, 1975
13,943.23
Corporation
February 29, 1976
123,309.96
14284-79
Robert M. Carroll
December 31, 1975
58,441.43
and Elaine M.
Carroll
14285-79
Donald E. Tiede
December 31, 1975
46,837.64
and Donna L.
Tiede
The three dockets have been consolidated for purposes of trial, briefing, and opinion. Following concessions by the parties, the only issues remaining for our decision are (1) whether Inland Asphalt Company (hereinafter Inland Asphalt) is entitled to deductions for payments made by it in settlement of two Tax Court cases in the amount of $162,000, for interest in the amount of $56,358.22 resulting from the settlement of such cases, and for legal and accounting fees for professional services in connection with such cases in the amount of $18,558.25, under section 162, [2] for its fiscal year ending February 29, 1976; (2) whether a tax settlement payment in the amount of $81,000 made by Inland *287 Asphalt to, or on behalf of, petitioners Robert M. Carroll and Elaine M. Carroll during 1975 is taxable to them as a constructive dividend; and (3) whether a tax settlement payment in the amount of $81,000 made by Inland Asphalt to, or on behalf of, petitioners Donald E. Tiede and Donna L. Tiede during 1975 is taxable to them as a constructive dividend. FINDINGS OF FACT Some of the facts in these cases were stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Inland Asphalt is a corporation organized in the State of Washington with offices in Spokane, Washington. It filed its corporate income tax return for the fiscal year ending February 29, 1976, with the Internal Revenue Service Center, Ogden, Utah. Petitioners Robert M. Carroll (hereinafter Carroll) and Elaine M. Carroll resided in Spokane, Washington, at the time of filing their petition herein. They filed a joint Federal income tax return for the year 1975 with the Internal Revenue Service Center, Ogden, Utah. Petitioners Donald E. Tiede *288 (hereinafter Tiede) and Donna L. Tiede resided in the State of Washington, at the time of filing their petition herein. They filed a joint Federal income tax return for the year 1975 with the Internal Revenue Service Center, Ogden, Utah. Inland Asphalt was incorporated in 1934. On or about March 25, 1966, it made an election, under section 1372(a), to be treated as an "electing small business corporation" under subchapter S of the Internal Revenue Code. From the time such election was made through June 5, 1975, Carroll and Tiede each owned 50 percent of Inland Asphalt's stock. inland Asphalt timely elected, under section 1372(e), to terminate its subchapter S status effective for the fiscal year commencing March 1, 1969. On February 20, 1969, it issued a check for $225,000 to Carroll and a check for $225,000 to Tiede. The checks were issued in order to disburse undistributed taxable income. Each check was reported for Federal income tax purposes as consisting of the following: Shareholder's share of undistributed taxable income
for the current year
$ 17,055.41
Dividends entitled to exclusion
11,672.13
Nondividend distribution (Shareholder's
share of previously taxed undistributed
taxable income)
196,272.46
$225,000.00
*289 Shortly after issuance of the aforementioned checks, Carroll and Tiede each loaned $150,000 to Inland Asphalt and received promissory notes in return. Victor Cole, Inland Asphalt's certified public accountant during 1969, advised Carroll and Tiede to have Inland Asphalt distribute the money to them and then subsequently make the loans to it. [3] The loans benefited Inland Asphalt by increasing its cash flow and improving its financial statement position. In advising Carroll and Tiede, Mr. Cole used the standard of care present in the community at that time. Respondent, however, determined that the portions of the distributions loaned back to Inland Asphalt by Carroll and Tiede constituted, in substance, distributions of "property" rather than money and that, therefore, the notes constituted taxable dividends to the extent of the available earnings and profitis of Inland Asphalt. As a result, on March 13, 1973, respondent issued statutory notices of deficiency to Carroll and Tiede in which he treated the amounts of the notes as taxable dividend distributions. Carroll and Tiede each *290 filed a petition with this Court for redetermination of the deficiency in his tax determined by respondent. On June 5, 1975, Tiede sold his 50 percent of the outstanding stock of Inland Asphalt to two of its employees, James Etter (hereinafter Etter) and Walther Hedlund (hereinafter Hedlund). At the time of such sale, the cases relating to the aforementioned notices of deficiencies were still pending before this Court. Simultaneously with the sale by Tiede of his stock, Inland Asphalt entered into an indemnity agreement with Carroll and Tiede, whereby it agreed to pay the amount of any personal income taxes and penalties subsequently determined to be due from Carroll and Tiede as a result of the distributions made to each of them at the time the corporation terminated its subchapter S election. Neither Tiede nor Carroll had ever considered filing a lawsuit against either Inland Asphalt or Mr. Cole as a result of the incorrect information received by him concerning the tax consequences of such distributions. The cases involving the deficiencies of Tiede and Carroll for the year 1969 were ultimately settled. On November 3, 1975, stipulated decisions were entered by this Court *291 finding that deficiencies in income tax were due from Carroll and his wife in the amount of $81,000 (docket No. 4388-73) and from Tiede and his former wife in the amount of $81,000 docket No. 4387-73). On November 21, 1975, at a special meeting of the board of directors of Inland Asphalt, it was resolved that Inland Asphalt would pay the Internal Revenue Service the deficiencies of $81,000 due from Carroll and from Tiede, plus interest due on each deficiency of $28,179.11. [4] Prior to December 31, 1975, Inland Asphalt paid the deficiencies of Tiede and Carroll for the year 1969, plus interest thereon. For Inland Asphalt's taxable year ended February 29, 1976, respondent disallowed the following deductions: Tax settlement
$162,000.00
Interest expense
56,358.22
Legal and accounting expense [5]
18,558.25
*292 Respondent included the $81,000 tax settlement payment made by Inland Asphalt to, or for the benefit of, Tiede in petitioners Donald E. and Donna L. Tiede's gross income, under section 61, for the year 1975. Likewise, he included the $81,000 tax settlement payment made by Inland Asphalt to, or for the benefit of, petitioners Robert M. and Elaine M. Carroll in their gross income, under section 61, for the year 1975. OPINION The questions we must decide in these consolidated cases are whether certain payments made by Inland Asphalt to, or on behalf of, Tiede and Carroll are deductible by it as ordinary and necessary business expenses under section 162 and not taxable to the individual petitioners as constructive dividends. Issue 1: Business Expense Deductions
Petitioners contend that Inland Asphalt is entitled to deduct the amounts paid by it in settlement of the cases regarding the Federal income tax liability of Tiede and Carroll, for interest resulting from such settlements, and for fees for *293 professional services in connection with the cases, as ordinary and necessary business expenses, under section 162. In this regard, they, in essence, maintain that Inland Asphalt paid such amounts to avoid potential lawsuits by Tiede and Carroll as a result of the misinformation received by them concerning the tax consequences to them of the distributions from, and loans back to, Inland Asphalt in 1969. Petitioners claim that Carroll and Tiede could have instituted such lawsuits against Inland Asphalt containing causes of action for violation of Wash. Rev. Code sec. 19.86.020[6] and for breaching its fiduciary duty to them as stockholders. Petitioners place substantial reliance on Old Town Corp. v. Commissioner,37 T.C. 845 (1962). In that case the corporate taxpayer's stock was listed on the New York Stock Exchange. Mr. McGraw (formerly a principal stockholder of McGraw-Hill *294 Publishing Company), while contemplating the purchase of the majority of the voting stock of the taxpayer, negotiated with a Mr. Roberts for the prospective employment of Roberts by the taxpayer. A sale of the majority of the voting stock of the taxpayer to McGraw was effected. Thereafter the taxpayer's board of directors did elect to employ Roberts. It, however, discharged him within a short time.Following his discharge, Roberts instituted a lawsuit containing three causes of action against McGraw for fraud and breach of contract and one cause of action against the taxpayer. McGraw notified the taxpayer that, in the event he incurred any liability as a result of the action brought by Roberts, he would seek reimbursement from the taxpayer. The taxpayer's general counsel advised its board of directors that McGraw's claim for reimbursement had substance and that, in their opinion, it would not constitute waste or mismanagement for the board of directors to effect a settlement of the lawsuit brought by Roberts. Based on that advice, the taxpayer's board of directors voted for the taxpayer to compromise the claims by Roberts against the taxpayer and McGraw and to pay all legal expenses *295 attendant to the lawsuit. In Old Town Corp., we held that the amounts paid by the taxpayer, which were attributable to the claims against McGraw, were deductible by it as ordinary and necessary business expenses, emphasizing that, under the circumstances, the taxpayer reasonably believed that McGraw's claim against it had substance and, therefore, necessitated the settlement on his behalf. We also relied upon objective evidence indicating that the payments were made to avoid liability which might have arisen from a suit by McGraw, rather than to benefit McGraw.
Here, Carroll and Tiede never considered filing claims for reimbursement against Inland Asphalt. Thus, Inland Asphalt had no reason to believe that making the settlement payments was necessary to avoid an exposure to liability. Objective evidence that the settlement payments were made by Inland Asphalt to avoid liability, as opposed to accommodate Carroll and Tiede is likewise absent. There is no indication that Inland Asphalt's board of directors in resolving that Inland Asphalt pay the deficiencies of Carroll and Tiede relied on legal advice that it would be in the best interest of Inland Asphalt to do so. Moreover, *296 whereas had Old Town's board of directors acted solely to benefit McGraw, they would have been accountable to the shareholders for corporate waste or mismanagement, here the board of directors would not expose themselves to such personal liability since all of Inland Asphalt's shareholders were members of its board of directors and assented to the payments being made to, or on behalf of, Carroll and Tiede. Kopps' Co., Inc. v. United States,636 F.2d 59 (4th Cir. 1980); Dolese v. United States,605 F.2d 1146 (10th Cir. 1979); and Kanne v. American Factors,190 F.2d 155 (9th Cir. 1951), upon which petitioners rely, are unlike the present case, since in all those cases lawsuits had been filed to which the corporate taxpayers involuntarily were parties and which may have interfered with, or even destroyed, the corporations' business activities. Likewise, in BHA Enterprises, Inc. v. Commissioner,74 T.C. 593 (1980), proceedings had been instituted by the Federal Communications Commission against the corporate taxpayer, who was in the business of radio broadcasting, to revoke its broadcasting licenses. In conclusion, *297 the instant case is distinguishable from the cases upon which petitioners rely, since there is no evidence that Inland Asphalt was a party to a lawsuit or that it reasonably believed that there was a possibility of a lawsuit, containing a colorable claim, being filed against it. Instead, it appears that Inland Asphalt gratuitously made the payments in question, which related solely to personal liabilities of its shareholders. Such payments, therefore, do not represent ordinary and necessary business expenses under section 162. Issue 2: Constructive Dividends
We must next determine whether the settlement payments made by Inland Asphalt in 1975 to, or on behalf of, Tiede and Carroll are taxable to them as constructive dividends. Initially, we note that petitioners bear the burden of proving that the payments do not constitute constructive dividends. [7]Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.
*298 It is well established that a payment made by a corporation in satisfaction of an obligation of its shareholder or for his benefit may constitute a taxable dividend to such shareholder to the extent of available earnings and profits. Wall v. United States,164 F.2d 462, 464 (4th Cir. 1947); Sachs v. Commissioner,32 T.C. 815, 820 (1959), affd. 277 F.2d 879, 882 (8th Cir. 1960). It is of no consequence that the formalities of a dividend are absent, that the distribution is not recorded as a dividend on the corporate books, or that the distribution is not pro rata. Hash v. Commissioner,273 F.2d 248, 250 (4th Cir. 1959), affg. a Memorandum Opinion of this Court; Silverstein v. Commissioner,36 T.C. 438, 443 (1961). Petitioners cite Palo Alto Town & Country Village, Inc. v. Commissioner,565 F.2d 1388, 1391 (9th Cir. 1977) for the proposition that disallowed expenses of a corporation cannot automatically be treated as constructive dividends to the corporation's shareholders unless some *299 economic benefit to the shareholders is present. Carroll and Tiede contend that, in the instant case, the only economic benefit accrued to Inland Asphalt, not to them, since Inland Asphalt received the loan back (in 1969) of funds that were originally held by it and their own "cash position was dimished [sic] on money they had already paid tax upon." Carroll and Tiede's contention improperly focuses on whether they or Inland Asphalt derived a benefit as a result of the 1969 transaction. We are here concerned with the question whether as a result of the 1975 settlement payments, for which deductions claimed by Inland Asphalt are disallowed herein, petitioners received an economic benefit. Notices of deficiency relating to the Carrolls' and Tiedes' individual income tax returns for the year 1969 were issued to only the individual petitioners herein, and they alone were parties in the previous proceedings before this Court. As a result of the stipulated decisions entered in those cases, Carroll and Tiede incurred liabilities for deficiencies in income tax; Inland Asphalt thereby incurred no liability. Had the deficiencies not been paid, respondent would have looked first to *300 Carroll and Tiede for payment and then to their assets, not to Inland Asphalt. Therefore, when Inland Asphalt made the settlement payments in question, Carroll and Tiede each clearly received the direct and substantial economic benefit of having his tax liabilities reduced by the amount of the settlement payment made on his behalf. See Silverstein v. Commissioner,supra at 442-443; Sachs v. Commissioner,supra at 820-821. Petitioners argue that since Tiede sold his stock prior to Inland Asphalt making the settlement payments, the payments must be treated as part of the purchase price for his stock and taxed to him at capital gain rates. In support of this argument, they rely upon that portion of section 1.61-9(c), Income Tax Regs., dealing with the situation where a dividend is declared prior to the date on which stock is sold, but the purchaser then becomes entitled to receive the dividend. [8] Here, as discussed above, it was Tiede, and not the purchasers of his stock, who received the economic benefit of the settlement payments. Therefore, his circumstances are different from the situation described in the *301 regulation. We think that it is important to note that, by the June 5, 1975, indemnity agreement, Etter and Hedlund did not become personally obligated to pay the amount of any income taxes and penalties subsequently determined to be due from Tiede. Instead, the indemnity agreement clearly constitutes an acknowledgment by them of Inland Asphalt's indebtedness to Tiede and Carroll. Had the $81,000 settlement payment for Tiede first been distributed by Inland Asphalt to Etter and Hedlund and then paid by them to, or on behalf of, Tiede, the distribution might have *302 been taxes to Hedlund and Etter as a dividend. However, here, the payment was made directly by Inland Asphalt to, or on behalf of, Tiede and there is no evidence that it was intended to be in consideration for his stock. See Henry Schwartz Corp. v. Commissioner,60 T.C. 728, 738-739 (1973). Moreover, petitioners' argument that the settlement payment made for Tiede should be treated as part of the purchase price for his stock is contradicted by the fact that a settlement payment was also made by Inland Asphalt to, or on behalf of, Carroll, who did not sell any of his shares. In short, although the agreement to pay any income taxes owing from Tiede and Carroll as a result of the 1969 distributions was entered into on the same day that the sale of Tiede's stock was effected, there is no evidence that the execution of the indemnity agreement and the sale were two parts of a single transaction, as opposed to two separate transactions. Finally, petitioners, in their reply brief, argue that, at worst, the tax settlement payments are taxable to the Tiedes and Carrolls as additional income for services and are deductible by Inland Asphalt.There is no evidence indicating *303 that the settlement payments in 1975 were related to the performance of services. Moreover, the mere fact that the settlement payments were made to, or on behalf of, Carroll and Tiede, who were employees as well as shareholders of Inland Asphalt, does not permit us to treat them as deductible compensation, since there is no showing that their salaries plus the payments constituted "reasonable" compensation for their services within the meaning of section 162(a). In accordance with the above, we find that petitioners have failed to sustain their burden of proving that the settlement payments do not constitute constructive dividends. We, accordingly, hold that the settlement payments made by Inland Asphalt are taxable to Tiede and Carroll as constructive dividends, for the taxable year 1975. Decision will be entered under Rule 155 in docket No. 14283-79.
Decisions will be entered for the respondent in docket Nos. 14284-79 and 14285-79.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Robert M. Carroll and Elaine M. Carroll, docket No. 14284-79 and Donald E. Tiede and Donna L. Tiede, docket No. 14285-79.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. Carroll and Tiede together composed two-thirds of Inland Asphalt's board of directors.↩
4. As of November 21, 1975, Inland Asphalt's board of directors was composed of Carroll, Etter, Hedlund, and Robert M. Brown. The directors unanimously passed the resolution that Inland Asphalt pay the deficiencies and interest owing by Tiede and Carroll. They did not obtain a legal opinion as to whether Inland Asphalt could pay the deficiencies assessed against Tiede and Carroll.↩
5. These expenses were allocable to, and paid by, Inland Asphalt in connection with the litigation and settlement of the Tax Court cases (docket Nos. 4387-73 and 4388-73).↩
6. Wash. Rev. Code sec. 19.86.020 provides: Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.↩
7. The notices of deficiency issued to the individual petitioners herein state only that the settlement payments made to them, or for their benefit, are includable in their gross income under section 61. In their opening argument and on brief, petitioners maintain that respondent, by now asserting that the payments constitute constructive dividends to Carroll and Tiede, has changed his position and was required to raise such position in amended pleadings. We disagree with petitioners. Section 61 defines the term "gross income" broadly as "all income from whatever source derived." (See Sachs v. Commissioner,32 T.C. 815, 818-820 (1959), affd. 277 F.2d 879 (8th Cir. 1960), holding that amounts paid by a corporation on behalf of a shareholder-employee were taxable to him as dividends, although respondent simply determined that the amounts represented taxable income to him without assigning any particular reason for such determination.) Furthermore, dividends are specifically required to be included in gross income by subsection (7) of section 61. As petitioners' opening argument indicates, they were apprised that respondent intended to proceed upon the theory that the settlement payments constituted taxable dividends. Had petitioners pled surprise that respondent was relying on such theory, a request for continuance, if justified, would have been granted. Petitioners, however, did not plead surprise and request a continuance. Inasmuch as respondent's original determination was broad enough to include the grounds upon which he now relies, we think that it was not incumbent upon respondent to amend his answer and do not regard the burden of proof as being shifted to him. Barbourville Brick Co. v. Commissioner,37 T.C. 7, 14 (1961); Sorin v. Commissioner,29 T.C. 959, 968-970 (1958), affd. per curiam 271 F.2d 741↩ (2nd Cir. 1959).
8. That part of sec. 1-61-9(c), Income Tax Regs., provides: When stock is sold between the time of declaration and the time of payment of the dividend, and the sale takes place at such time that the purchaser becomes entitled to the dividend, the dividend ordinarily is income to him. The fact that the purchaser may have included the amount of the dividend in his purchase price in contemplation of receiving the dividend does not exempt him from tax. Nor can the purchaser deduct the added amount he advanced to the seller in anticipation of the dividend. That added amount is merely part of the purchase price * * *.↩