**CUMMINS DIESEL SALES OF ORE-GON, INC., an Oregon corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Robert H. WILLS et ux., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. Nos. 60–333, 60–334.

United States District Court
D. Oregon.

July 3, 1962.

George W. Mead, Portland, Or., for plaintiffs.

Sidney I. Lezak, Acting U. S. Atty., Portland, Or., and Dale E. Anderson, Dept. of Justice, Washington, D. C., for the United States.

SOLOMON, Chief Judge.

Cummins Diesel Sales of Oregon, Inc. (Cummins) and its principal officer and stockholder, Robert H. Wills, brought actions to recover taxes which they assert were unlawfully assessed and collected. The total amounts claimed are $33,301.71 for 1955 and $18,937.71 for 1956. The bases for the assessments are:

(1) imposition of a penalty tax pursuant to Section 531 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 531) for the corporation's unlawful accumulation of earnings in the years 1955 and 1956;

(2) disallowance of $250.00 in 1955 and $1,850.00 in 1956 paid to a nurse to accompany Wills on combined business and vacation trips which were claimed as business deductions.

(3) disallowance of $6,437.03 in 1955 and $3,164.44 in 1956 paid as travel expenses of Wills, his wife, daughter and nurse on trips to Hawaii, California, and other places, and which were claimed as business deductions.

(4) disallowance of $285.60 and $120.-00 per year in both 1955 and 1956, paid as dues to the Arlington Club and the Aero Club.

The sums disallowed as deductions to Cummins in items (2) through (4) were charged by Internal Revenue to Wills individually as dividend income and were taxed accordingly.

Before trial, the parties stipulated that one-half. of the amounts claimed in item (3) as travel expenses were deductible. This was based upon Wills' representation that on the trips to California and Hawaii, in addition to vacationing with members of his family, he bought and sold diesel motors and discussed business matters. It was also stipulated that the dues paid to the Arlington Club were properly deducted by the corporation as a business expense, but that the dues paid to the Aero Club were properly disallowed. This was based upon Wills' representation that the Arlington Club is not a social club but that it is strictly a business club, as opposed to the Aero Club, which he admitted was a social club.

*Item (1)—Unlawful accumulation of earnings.*

■ Cummins Diesel Sales of Oregon, Inc., was formed in 1939 by Wills, another dealer, and a business agent for Cummins Engine Company to sell and service Cummins diesel engines in the vicinity of Portland, Oregon. Wills later purchased the interests of the other two shareholders with his own funds. During 1955 and 1956, Wills owned 96.45 per cent of the corporation's common stock.

Cummins' annual sales from 1951 through 1955 were between $2,609,935 and $2,954,006, and reached a peak of $3,511,522 in 1956. From an initial contribution of $22,500, the capital of the corporation increased largely through accumulations of earnings to $1,096,164 in 1956. Of that total, $857,963 was carried on the books as capital stock created through nontaxable stock dividends distributed from 1949 through 1954. No taxable dividends were ever declared or paid.

Beginning in 1950, Wills received an increase in his salary from Cummins Diesel to $32,500 a year plus a bonus. The bonus in 1955 was $32,500, and in 1956 it was $33,700. Wills also borrowed money from Cummins on a short-term interest-free basis for his personal use.

Substantial sums of money were loaned by Cummins interest-free to Valley Land and Warehouse Co., Inc. (Valley), Maillet Land and Investment Co. (Maillet), Linnton Land Company (Linnton), and Portland Leasing Corporation, all of which were controlled by Wills.

Valley invested $50,000 in property located in Eugene, Oregon, which it rented to Cummins. It invested $150,000 in some Portland property which it leased and eventually sold in 1955 to a motor express company for $132,000. In 1955, shortly after acquiring 98.6 per cent of all the stock in Maillet, Valley borrowed over $56,000 from Cummins. Substantially the same debt remained outstanding at the end of 1956.

Maillet was incorporated in 1954 to engage in the real estate, general warehousing, and storage businesses. In 1954, 1955 and 1956, it borrowed $58,000 from Cummins to invest in building lots, $45,000. for a personal residence with swimming pool, and $125,000 for a restaurant. All of these properties were located in Palm Springs, California. At the end of 1955, Maillet owed Cummins $183,575.86, and at the end of 1956 $160,-660.03.

Linnton was incorporated in 1955 to acquire rental property. In June of that year, it purchased property in Portland from a transportation company with approximately $156,000 borrowed from Cummins and leased it back to the same transportation company for 15 years at a total net rental of $187,000. Six days later, Cummins was repaid with proceeds of a loan from a Portland bank. Linnton also borrowed from Cummins in 1955 and 1956 for other purposes.

Portland Leasing was activated in 1955 to purchase properties in Portland for lease to Cummins. Cummins advanced $37,024 of the initial $255,000 invested in those properties, and by 1956 advanced an additional $157,773 to cover other purchases. Property valued at $22,500 was leased to third parties for use as a service station site and for storage purposes, and the balance was leased to Cummins.

"[T]he fact that earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax * * *." Int. Rev.Code of 1954, § 533(a), 26 U.S.C.A. § 533(a).

" '[R]easonable needs of the business' includes the reasonably anticipated needs of the business." Int. Rev.Code of 1954, § 537, 26 U.S.C.A. § 537.

In Kerr-Cochran, Inc. v. Commissioner, 8 Cir. 1958, 253 F.2d 121, 128, the court emphasized the following factors, all of which are present here, as indications of an intent to avoid paying income tax: steady accumulation of corporate earnings without payment of dividends, resulting in total quick assets far in excess of the reasonable demands of the business; substantial investment of corporate funds in unrelated business activities; and use of corporate earnings to satisfy the personal needs of the principal stockholder. The court also held that the avoidance of taxes to the stockholders need not be the sole purpose behind the accumulation. It is sufficient if it is one of the determinating purposes. The fact that Cummins had outstanding interest-free loans amounting to $278,781.51 in 1955 and $380,887.42 in 1956 to four other corporations controlled by Wills demonstrates that the corporation was in a position to pay dividends. Of those loans, more than $225,000 was used for purposes wholly unrelated to the business of selling and servicing diesel engines.

Wills had no economic reason to want to distribute earnings. Not only would he avoid being taxed at least 80 per cent of his income [1], but he would have the use of those retained funds to lend directly to himself and to corporations which he controlled. Even if Cummins paid the accumulated earnings tax on amounts unlawfully retained, the total tax would be less than that Wills would have been required to pay individually had dividends been paid. By not declaring dividends, Wills also benefited from the increase in his net worth. He used statements of his personal net worth to induce banks to lend money to other corporations which he controlled as well as to himself.

In my view, the facts clearly show that Wills knowingly and wilfully permitted Cummins to accumulate earnings beyond the reasonable needs of the business for the purpose of avoiding income taxes which he would have otherwise been required to pay.

*Item (2)—Services of the nurse.*

In 1953, Wills underwent surgery for removal of a brain tumor. He recovered from the operation, but in 1955 and 1956 he required assistance while traveling. He chose to have a registered nurse accompany him on his combined business and vacation trips. In addition to performing medical services such as giving him pills and rubbing his back, the nurse also drove his car, arranged appointments and performed minor secretarial duties. Just as a secretary who occasionally gives pills to her employer and rubs his back remains a secretary, so a registered nurse who occasionally performs secretarial duties is still a nurse. No attempt was made to itemize the time spent by the nurse in each capacity, but it was stipulated that a nurse was hired because of his health condition.

1. Government calculations show that if Cummins Diesel had distributed all of its earnings, Wills would have had additional tax liability of $67,500 in 1955 and $34,300 in 1956.

On the basis of the record, I find that the services which she was hired to perform and which she was capable of performing were predominantly those of a nurse and not a secretary.

A nurse's services, being predominantly personal to the patient, are not chargeable to a corporation as an "ordinary and necessary" business expense. See Sparkman v. Commissioner, 9 Cir. 1940, 112 F.2d 774; Commissioner v. Doak, 4 Cir. 1956, 234 F.2d 704. The action of the District Director in treating the corporation's payment of the nurse's wages as dividend income to Wills was correct.

The plaintiffs are entitled to judgments based upon the amounts stipulated as to items (3) and (4). The Government is entitled to judgments on all other issues.

Counsel for the Government shall submit findings of fact, conclusions of law and judgments in accordance with this opinion.