T.C. Memo. 2002-40

UNITED STATES TAX COURT

CAPITAL VIDEO CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

KENNETH GUARINO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 4094-00, 4096-00.     Filed February 11, 2002.

<u>James P. Redding</u> and <u>Brian C. Newberry</u>, for petitioners.

<u>Michael P. Breton</u>, for respondent.

MEMORANDUM OPINION

SWIFT, <u>Judge</u>:  These cases are consolidated for trial,
briefing, and opinion.  Respondent determined deficiencies in
petitioners' Federal income taxes and accuracy-related penalties
as follows:

Capital Video Corp.

| Taxable Year Ending | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|---|---|---|
| Feb. 29, 1996 | $116,950 | $23,390 |

Kenneth Guarino

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|---|---|---|
| 1996 | $312,874 | $34,515 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the primary issue for decision involves whether petitioner Capital Video Corp. (Capital Video) may deduct as ordinary and necessary business expenses $515,038 in legal fees paid to defend its sole shareholder, petitioner Kenneth Guarino (Guarino), against various criminal indictments.

## Background

The facts of these cases were submitted fully stipulated under Rule 122, and the stipulated facts are so found.

At the time the petitions were filed, Capital Video's principal place of business and Guarino's primary residence were located in Cranston, Rhode Island.

On February 27, 1979, Capital Video was incorporated, and thereafter, Capital Video was engaged in the sale of pornographic

videotapes and related products out of its office in Rhode Island. Capital Video's taxable year ended on the last day of February.

During the 1980s and early 1990s, Capital Video and Guarino made "tribute" payments to Natale Richichi (Richichi), a capo in the Gambino crime family, in excess of $1,728,000 in exchange for protection provided by the Gambino crime family to Capital Video against extortion from other organized crime families.

Also, during these same years Guarino conspired with Richichi to obstruct the Internal Revenue Service in the assessment and collection of Richichi's Federal income taxes relating to the tribute payments Richichi received from Capital Video and Guarino.

Guarino's conspiracy and obstruction relating to the above tribute payments included manipulating the accounting records of Capital Video, skimming cash from peep show machines to provide cash for the payments made to Richichi, and filing false Forms 1099 relating to the payments made to Richichi.

During 1992, 1994, and 1995, Guarino, Richichi, and other individuals were indicted on various Federal criminal charges relating to the above activities. Guarino was indicted in the U.S. District Court for the District of Nevada and charged with conspiracy to impede, impair, and obstruct the lawful functions of the Internal Revenue Service and to evade the Federal income

tax liabilities of Richichi under 18 U.S.C. sec. 371 (2000). Guarino was also charged with conspiracy to bribe a union official under 18 U.S.C. sec. 1954 (2000), with interstate transportation of obscene material through use of a common carrier under 18 U.S.C. sec. 1462 (2000), and with aiding and abetting an offense against the United States under 18 U.S.C. sec. 2 (2000).

On March 1, 1996, an election was made on behalf of Capital Video with the Internal Revenue Service for Capital Video to be taxed pursuant to subchapter S of the Internal Revenue Code.

On January 10, 1997, Guarino pled guilty to one count of the above indictment against him relating to the conspiracy to obstruct the lawful functions of the Internal Revenue Service and to evade Richichi's Federal income tax liabilities.

On April 25, 1997, pursuant to the plea agreement, Guarino was sentenced to 16 months in prison, and he was fined $250,000. As part of Guarino's guilty plea, Guarino accepted the Government's allegation that he aided and abetted a fraud on the Internal Revenue Service.

During calendar years 1995 and 1996, Capital Video paid legal fees in the amounts of $250,034 and $517,038, respectively, to provide legal representation for Guarino in connection with the above criminal charges. Of the above $517,038 in legal fees

paid by Capital Video in 1996, $423,101 was paid after February 29, 1996, when Capital Video elected to be taxed as an S corporation.

Capital Video was not named as a defendant in the above criminal case, and Capital Video was not legally required to pay the legal fees of Guarino.

For its taxable year ending February 29, 1996, Capital Video timely filed its Federal Corporation Income Tax Return, and Capital Video deducted thereon as ordinary and necessary business expenses the $343,971 it had paid during its taxable year ending February 29, 1996, as legal fees in connection with the above criminal charges against Guarino.

For its short taxable year March 1 to December 31, 1996, Capital Video timely filed its Federal Income Tax Return for an S Corporation, and Capital Video deducted thereon as ordinary and necessary business expenses the $423,101 it had paid during its short taxable year as legal fees in connection with the above criminal charges against Guarino.

On his 1996 individual Federal income tax return, Guarino did not include in his reported income any portion of the $343,971 in legal fees paid by Capital Video during its 1996 taxable year. Also (as a result of the $423,101 in deductions claimed by Capital Video on its 1996 Federal Income Tax Return for an S Corporation), Guarino's share of the ordinary income of

Capital for Cap Video for the period March 1 to December 31, 1996 (as reported on Guarino's 1996 individual Federal income tax return) was reduced by $423,101.

In respondent's notice of deficiency mailed to Capital Video for Capital Video's taxable year ending February 29, 1996, respondent disallowed the full $343,971 claimed ordinary and necessary business deduction relating to Guarino's legal fees.

In respondent's notice of deficiency mailed to Guarino for 1996, respondent: (1) Treated the full $343,971 in legal fees of Guarino that Capital Video paid during Capital Video's taxable year ending February 29, 1996, as a constructive taxable dividend to Guarino, and (2) increased by $423,101 Guarino's share of Capital Video's taxable ordinary income for the period March 1 to December 31, 1996. Both of respondent's adjustments mentioned in this paragraph resulted in increases to Guarino's taxable income for 1996 in the full amounts of those adjustments.

Prior to trial, respondent conceded that $250,034 of the above legal fees relating to Guarino that were deducted on Capital Video's tax return for its taxable year ending February 29, 1996, was paid by Capital Video in 1995 and therefore that $250,034 should not be charged to Guarino as taxable dividend income for 1996. As a result of respondent's concession (of the $343,971 in total claimed legal fees that respondent treated as a constructive dividend taxable to Guarino

for 1996) only $93,936 remains in issue as an adjustment to Guarino's income for 1996. The table below summarizes the adjustments respondent made that are still in dispute:

| | Capital Video Year Ending | | Guarino Calendar Year |
| Adjustment | 2/29/96 | 12/31/96 | 1996 |
| --- | --- | --- | --- |
| Legal fees disallowed | $343,971 | $423,101 | |
| Dividend income | | | $ 93,936 |
| Subchapter S income | | | 423,101 |

## Discussion

### Capital Video's Claimed Deduction of Guarino's Legal Fees

Generally, taxpayers may not deduct expenses of another person and may not deduct expenses that are personal in nature. Deputy v. du Pont, 308 U.S. 488, 494 (1940); Johnson v. Commissioner, 72 T.C. 340, 348 (1979).

Where expenses of another are paid in order to protect a taxpayer's business, the taxpayer, in limited circumstances, may be allowed to deduct the expenses. Lohrke v. Commissioner, 48 T.C. 679, 684-685 (1967). Also, legal fees paid relating to criminal charges against a taxpayer may be deductible where the alleged criminal activity sufficiently relates to the taxpayer's business. Commissioner v. Heininger, 320 U.S. 467, 474 (1943). The origin of the criminal charges to which the legal fees

relate, rather than the potential consequences of a conviction on the underlying charges, generally will control whether the legal fees qualify as business expenses. United States v. Gilmore, 372 U.S. 39, 48 (1963).

In Lohrke v. Commissioner, supra, we adopted a two-prong test for analyzing whether a taxpayer may deduct legal expenses of another. First, we analyzed whether the purpose or motive of the taxpayer in paying another person's legal expenses was to protect or promote the taxpayer's business, and second, we analyzed whether the expenses constituted ordinary and necessary business expenses of the taxpayer's business.

In their arguments herein, petitioners argue that the motive or purpose of Capital Video in making the "tribute" payments to Richichi was to protect and promote the business of Capital Video, that Guarino's conspiracy to evade the income taxes of Richichi (the charge to which Guarino pled guilty) was directly related to the "tribute" payments and to the related protection from extortion that Capital Video received, and therefore that Guarino's legal fees relating to the conspiracy charge should qualify as deductible business expenses of Capital Video.[1]

Respondent argues that petitioners have not established that Guarino's conspiracy to evade Richichi's income taxes was

---

[1]     Petitioners make no argument that the legal fees in dispute related to the various criminal charges against Guarino that were dropped as part of the plea agreement.

sufficiently related to the protection of Capital Video's business.  Respondent contends that therefore the legal fees paid by Capital Video relating to the conspiracy do not qualify as business deductions of Capital Video.  We agree with respondent.

We emphasize that the legal fees in dispute were paid to cover the legal fees of Guarino in connection with his criminal conspiracy activities relating to Richichi's income tax liabilities.  They were not paid as part of the "tribute" payments to obtain protection from Richichi.  There is no evidence herein that indicates that Richichi would not have provided the protection to Capital Video if Guarino had not participated in the conspiracy relating to Richichi's taxes and if Capital Video had not paid Guarino's legal fees.  In fact, the legal fees in dispute were paid by Capital Video years after the protection was provided by Richichi and years after the conspiracy between Guarino and Richichi occurred.

Apart from whether the tribute payments made by Capital Video to Richichi were made to protect the business of Capital Video, petitioners have not established that Guarino's participation in the conspiracy to avoid Richichi's income taxes and Capital Video's payment of the legal fees in dispute had a sufficient business relationship with the protection or promotion of Capital Video's business.

The legal fees paid by Capital Video in its taxable year ending February 29, 1996 ($343,971), and in its short taxable year ending December 31, 1996 ($423,101), to defend Guarino against the conspiracy charge are not deductible as business expenses of Capital Video.

Constructive Dividend to Guarino

A constructive dividend to a shareholder of a corporation may occur where the corporation "confers an economic benefit on * * * [the] shareholder without the expectation of repayment * * * even though neither the corporation nor the shareholder intended a dividend." Magnon v. Commissioner, 73 T.C. 980, 993-994 (1980). Not every payment by a corporation, however, which incidentally confers an economic benefit on a shareholder is treated as a constructive dividend. Hood v. Commissioner, 115 T.C. 172 (2000). Generally, the test of whether a payment is to be treated as a constructive dividend to a shareholder is whether the payment primarily benefited the shareholder and whether the payment was made for a valid business purpose of the corporation. Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1214 (5th Cir. 1978).

As we have held, petitioners have not established that Capital Video made the payments of Guarino's legal fees in connection with the business of Capital Video. Capital Video had no obligation to make such payments. The payment by Capital

Video of Guarino's legal fees conferred a significant economic benefit upon Guarino, Capital Video's sole shareholder, without an expectation of repayment and was not necessary for the business of Capital Video (i.e., the payment of the legal fees was not necessary for Capital Video to receive Richichi's protection from extortion).

We conclude that the payment by Capital Video of the $93,936 in Guarino's legal fees should be treated as a constructive dividend to Guarino. As to the $423,101 in legal fees of Capital Video that are disallowed herein as deductible business expenses of Capital Video for its short taxable year ending December 31, 1996, such adjustment mechanically results in additional income to Guarino in that same amount as a result of the corresponding increase in Guarino's share of the income of Capital Video, as an S corporation.

If respondent's income adjustments against Guarino are sustained herein, as we have done, then Guarino argues that for 1996 he should be entitled to additional miscellaneous itemized business expense deductions (subject to the percentage limitations applicable thereto) in the amount of the constructive dividend and the additional income of Capital Video, as an S corporation, that is to be charged to Guarino. The apparent basis for Guarino's argument is that if he is to be charged with

a constructive dividend and with additional income from Capital Video relating to the legal fees Capital Video paid, he should be deemed to have incurred the legal fees, and the legal fees should be treated as his miscellaneous business expenses.

The analysis herein to the effect that the legal fees in dispute do not constitute ordinary and necessary business expenses of Capital Video also applies to Guarino's argument that the legal fees should be deductible ordinary and necessary business expenses to him.  Guarino has not shown a sufficient business nexus to the legal fees for the fees to qualify as ordinary and necessary business expenses to him.[2]  We reject Guarino's argument as to his entitlement to miscellaneous itemized business expense deductions relating to the legal fees paid by Capital Video.

## Sec. 6662 Penalties

Under section 6662, a penalty of 20 percent is imposed on any portion of an understatement of tax attributable to negligence or to disregard of the rules or regulations.  For purposes of section 6662(a), negligence constitutes a failure to make a reasonable attempt to comply with the Internal Revenue Code.  Sec. 6662(c).

---

[2]    Petitioners make no argument that respondent has the burden of proof under sec. 7491.

Petitioners cite Jack's Maint. Contractors, Inc. v. Commissioner, T.C. Memo. 1981-349, revd. per curiam 703 F.2d 154 (5th Cir. 1983), and Hood v. Commissioner, 115 T.C. 172 (2000), as substantial authority for petitioners' treatment of the legal fees paid by Capital Video.

In Jack's Maint. Contractors, Inc. v. Commissioner, supra, we allowed a corporate taxpayer a deduction for its payment of legal expenses of its shareholder relating to the shareholder's indictment for criminal tax evasion. Reversing, the Court of Appeals for the Fifth Circuit held that the legal fees were not deductible because the legal fees were personal in nature and did not qualify as an ordinary and necessary business expense of the corporation.

In Hood v. Commissioner, supra, we followed the Court of Appeals for the Fifth Circuit's reversal of Jack's Maint. Contractors, Inc. v. Commissioner, supra, and we disallowed a corporation a deduction for legal fees the corporation had paid relating to an indictment of its sole shareholder for tax evasion.

Significant to the penalties involved in these cases is the fact that in Hood, decided in 2000, we declined to impose the accuracy-related penalty for negligence. We stated as follows:

> Given that * * * [the taxpayer's] reporting position
> was consistent with our holding in Jack's Maintenance

<u>Contractors, Inc. v. Commissioner</u>, <u>supra</u>, we find there was no negligence or disregard of rules or regulations on the part of * * * [the taxpayer].  [<u>Id.</u> at 183.]

We believe that for the same reason, petitioners herein should be relieved of the section 6662 penalties.  Petitioners' tax returns for the years in dispute were filed prior to our opinion in <u>Hood v. Commissioner</u>, <u>supra</u>, which was filed in the year 2000, and petitioners' tax return preparer would have had access to the same authority that the taxpayers in <u>Hood</u> had access to.  In light of our holding in <u>Hood v. Commissioner</u>, <u>supra</u>, we do not impose upon petitioners herein the accuracy-related penalties relating to the disallowed legal fees paid by Capital Video and relating to the additional dividend and income adjustments made against Guarino.  We so hold.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.