# United States Court of Appeals

## For the First Circuit

No. 02-1564

CAPITAL VIDEO CORPORATION; KENNETH GUARINO,

Petitioners, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES TAX COURT

[Hon. Stephen J. Swift, U.S. Tax Court Judge]

Before

Lynch, Circuit Judge,
Cyr, Senior Circuit Judge, and
Lipez, Circuit Judge.

Brian C. Newberry, with whom James P. Redding and Hinckley, Allen & Snyder, LLP were on brief, for Appellants.

Judith A. Hagley, Attorney, Tax Division, with whom Eileen J. O'Connor, Assistant Attorney General, and Gilbert S. Rothenberg, Attorney, Tax Division, were on brief, for Appellee.

November 27, 2002

**LYNCH**, **Circuit Judge**. This case raises the issue of the deductibility of legal fees paid for a defense against criminal charges as ordinary and necessary business expenses under Internal Revenue Code § 162(a) (2000). The petitioners, a corporation and the sole shareholder of that corporation, were sent tax deficiency notices by the Internal Revenue Service (IRS) on April 24, 2000, in the sum of $116,950.00 for the corporation and $312,874.00 for the individual, plus penalties under I.R.C. § 6662. Both of the deficiency notices stemmed from legal fees relating to the defense of a federal criminal indictment against Kenneth Guarino. The legal fees were paid and then deducted by the corporation, Capital Video Corporation, and were not counted as income by Guarino, the corporation's sole shareholder. Petitioners argue that the criminal conduct was so related to the operation of the corporation that the legal fees were a deductible corporate expense and properly not included in Guarino's gross income. The tax court disagreed, finding that the criminal charges were not sufficiently related to the operation of the corporation. We affirm the ruling of the tax court.

I.

These facts are derived from the joint stipulated facts and from the exhibits, which were stipulated to be authentic.[1] The

---

[1] Some facts are taken from Guarino's plea agreement. Because only the authenticity of the plea agreement has been stipulated to, the parties dispute whether the facts detailed in the plea

-2-

parties rested on only these facts and exhibits before the tax court.

In 1979, Kenneth Guarino created and incorporated Capital Video Corporation, located in Cranston, Rhode Island; Guarino was the sole shareholder. Capital Video was a distributor of pornographic videotapes. Guarino was associated with Natale Richichi, a capo in the Gambino family of La Cosa Nostra, who dealt directly with the bosses of both the Gambino and Patriarca families and had influence with other factions of La Cosa Nostra. Guarino was concerned that members of other organized crime families would extort money from, or take over, his multimillion dollar business. He also worried that organized crime would interfere with his other business ventures, including a show at the Dunes Hotel and Casino in Las Vegas, called "Night Dreams," and a precious metals business in the New England area.

Guarino in 1979 began to pay "tribute" to Richichi to fend off extortion attempts and to assist Guarino with other business matters where Richichi's influence as a capo might benefit Guarino. This included protection for the Night Dreams production and the precious metals business in New England, and for influence with various union officials. The payments averaged between eight

---

agreement are binding on the parties. This debate is inapposite, because the only facts we derive from the plea agreement are used against the petitioners, who urged that the plea agreement facts be binding.

and ten thousand dollars twice per month. The total amount of the payments is in dispute, but between July 1985 and September 1995, Guarino paid Richichi at least $1,728,000 in cash.

A substantial portion of Richichi's income came from Guarino's payments, and Richichi was not otherwise lawfully employed. Richichi worried that the IRS would become aware of and attempt to tax his substantial income and assets. As a result, Richichi and Guarino made arrangements to conceal the tribute payments from the IRS. The payments were always made in cash. While some of the funds were paid by Capital Video, these payments were kept off of its accounting books. Some payments were hidden by skimming funds from the profits of Capital Video's video booth and peep show machines; Capital Video generated false Forms 1099 so that it appeared that the skimmed profits were instead flowing to Guarino and a nominee owner.[2] Other funds from Capital Video were reported as loans and dividends to nominee owners; Capital Video's bookkeeper, Guarino's former mother-in-law, would write these loan and dividend checks and cash them herself. Guarino also provided Richichi with a Capital Video credit card, had Capital Video lease Mercedes-Benz automobiles for him and for his daughter, and paid for health insurance coverage for Richichi and his wife under Capital Video's employee plan.

---

[2] A "nominee owner" is someone who owns an asset merely on paper, in order to disguise the true owner of property.

Apart from helping to hide the tribute payments from the IRS, Guarino also helped Richichi hide other assets. For instance, Guarino advised Richichi on the details of how to hide his ownership of property in the Dominican Republic by using a corporation and nominee owners. He also offered to help conceal Richichi's interest in property more directly, though there were no allegations that Guarino actually served in anything more than an advisory capacity with regard to Richichi's other assets.

In October 1992, Guarino and Richichi, along with another defendant, were indicted by a federal grand jury on one count of conspiring to bribe an official of the stagehands union in connection with Guarino's Las Vegas show. In August 1994, Guarino and Richichi were indicted with three others in a superseding indictment. Count One alleged a conspiracy to "defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the [IRS] in the ascertainment, computation, assessment, and collection of federal income taxes owed by" Richichi. Count Two reiterated the allegation of conspiracy to bribe a union official. Finally, in August 1995 Guarino and Richichi were again indicted under a second superseding indictment for both of these counts, and they were also each separately indicted for several counts of interstate transportation

of obscene material through the use of a common carrier, 18 U.S.C. § 1462, and aiding and abetting that crime under 18 U.S.C. § 2.[3]

In January 1997, Guarino, as part of a plea agreement, pled guilty only to the charge of conspiracy to evade taxes. He was sentenced to sixteen months in prison, eleven of which were served in a halfway house, and fined $250,000.

Capital Video was a subchapter C corporation whose fiscal year began on March 1. On March 1, 1996, Capital Video elected to be treated instead as a subchapter S corporation. This change in status meant, among other things, that its fiscal year needed to match the calendar year. As a result, Capital Video's first fiscal year as a subchapter S corporation was a short one, lasting from March 1 to December 31, 1996.

During the calendar years 1995 and 1996, Capital Video, out of its corporate funds, paid for all of the legal defense fees for Guarino stemming from all of these criminal indictments. Capital Video paid $250,034 in fees during calendar year 1995 and $517,038 in fees during calendar year 1996, for a total of $767,072. Of that amount, Capital Video spent $343,971 between March 1, 1995 and February 29, 1996, when it was a C corporation. For the C corporation fiscal year ending February 29, 1996, Capital Video deducted as ordinary and necessary business expenses the

---

[3] The obscenity charges did not stem from the operations of Capital Video, which was an on-site video store, but instead involved separate mail-order pornographic video businesses.

$343,971 it had paid in legal fees for Guarino. Capital Video spent the remaining $423,101 between March 1 and December 1, 1996; it deducted this amount for its subchapter S corporation short fiscal year. Guarino failed to report the payment of these legal fees as income.

The IRS sent notices of deficiency to both Capital Video and Guarino. For Capital Video, the IRS disallowed the full $343,971 in legal fees that had been deducted as an ordinary and necessary business expense for the C corporation fiscal year ending February 29, 1996.[4] For Guarino, the IRS assessed a tax deficiency for his 1996 taxes. The IRS treated the entire $343,971 paid by Capital Video when it was a subchapter C corporation as a constructive dividend to Guarino. The IRS later conceded that $250,034 of those fees, though deducted in the corporate fiscal year ending February 1996, were actually paid in 1995; they therefore could not be counted as personal income for Guarino for 1996. The remainder of the deducted amount, $93,936, was spent in January and February of 1996, part of the 1996 tax year for Guarino's personal tax purposes. For the legal fees paid by

---

[4] Subchapter S corporations do not pay income tax; they instead pass through all of their income to their shareholders every year. See I.R.C. §§ 1363(a), 1366(a). Thus, the validity of the deduction did not affect Capital Video's taxes once it elected S corporation status, but instead affected how much tax Guarino paid on the corporate disbursements.

-7-

Capital Video once it elected S corporation status, the IRS increased Guarino's 1996 taxable ordinary income by $423,101.

Capital Video and Guarino sued in the U.S. Tax Court, arguing that the conspiracy to evade payment of taxes was directly related to the tribute payments, which were themselves made to protect and promote Capital Video's business. Therefore, they argued, the legal fees were properly deductible by Capital Video as ordinary and necessary business expenses and should not be included in Guarino's taxable income. The tax court ruled for the IRS, finding that the petitioners had not established that the conspiracy charge was sufficiently related to the protection and promotion of Capital Video, though it refused to apply I.R.C. § 6662 penalties. Capital Video Corp. v. Comm'r, Nos. 4094-00, 4096-00, 2002 Tax Ct. Memo LEXIS 42, *9-*10, *15 (Feb. 11, 2002). This appeal timely followed.

II.

We review decisions of the tax court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. § 7482(a)(1); see State Police Ass'n v. Comm'r, 125 F.3d 1, 5 (1st Cir. 1997). The tax court's legal interpretations are reviewed de novo. Alexander v. IRS, 72 F.3d 938, 941 (1st Cir. 1995). We will overturn its factual findings only if they are clearly erroneous. Filios v. Comm'r, 224 F.3d 16, 21 (1st Cir. 2000). The clear error standard

-8-

of review extends to factual findings "based on inferences from stipulated facts." Medchem, Inc. v. Comm'r, 295 F.3d 118, 122 (1st Cir. 2002).  A trial court's finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Comm'r v. Duberstein, 363 U.S. 278, 291 (1960) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

III.

A.  Deduction by Capital Video

1.  The Legal Standard

The burden of proof is generally on the taxpayer to demonstrate that the IRS's nondeductibility determination is in error.  U.S. Tax Ct. R. 142(a); United States v. Janis, 428 U.S. 433, 440 (1976).  Once "a taxpayer introduces credible evidence with respect to any factual issue," the burden shifts to the IRS on that issue.  I.R.C. § 7491(a)(1).

Section 162(a) of the Internal Revenue Code permits the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Id. § 162(a).  To qualify as a § 162(a) deduction, an expense must "(1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary'

-9-

expense." Comm'r v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971). The phrase "ordinary and necessary" has a specialized definition in tax law. The term "necessary" imposes "only the minimal requirement that the expense be 'appropriate and helpful' for 'the development of the [taxpayer's] business.'" Comm'r v. Tellier, 383 U.S. 687, 689 (1966) (quoting Welch v. Helvering, 290 U.S. 111, 113 (1933)). Moreover, an expense need not be recurring in order to be considered ordinary under § 162(a):

> Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. A lawsuit affecting the safety of a business may happen once in a lifetime. The counsel fees may be so heavy that repetition is unlikely. None the less, the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack.

Welch, 290 U.S. at 114. To be deductible as ordinary and necessary, an expense must be "directly connected with" or have "proximately resulted from" business activity. Kornhauser v. United States, 276 U.S. 145, 153 (1928). Whether an expenditure is ordinary and necessary is usually a question of fact. Comm'r v. Heininger, 320 U.S. 467, 475 (1943).

Legal fees paid to defend the business interests of a taxpayer may normally be deducted under § 162(a). Tellier, 383 U.S. at 690. Public policy does not prohibit the deduction of legal fees relating to criminal activity so long as the legal fees are an ordinary and necessary expense of a trade or business. Id.

-10-

at 694-95; Heininger, 320 U.S. at 474. However, the payment of another taxpayer's expenses generally is not deductible as a business expense. Welch, 290 U.S. at 114. This principle extends to legal fees, which a taxpayer usually cannot deduct as a business expense if the fees are for legal services provided to another. J. Gordon Turnbull, Inc. v. Comm'r, 41 T.C. 358, 378 (1963), aff'd, 373 F.2d 87 (5th Cir. 1967).

This general rule, like many such rules, has a limited exception. If the taxpayer pays the expenses of another in order to promote the paying taxpayer's business interests, the payment may sometimes be deductible as an ordinary and necessary business expense. See Gould v. Comm'r, 64 T.C. 132, 134-35 (1975). The relevant test is that of Lohrke v. Commissioner, 48 T.C. 679 (1967), which the parties agree applies. The test is twofold: First, the tax court must "ascertain the purpose or motive which cause[d] the taxpayer to pay the obligations of the other person." Id. at 688. To meet this prong, the expense must have been made primarily to benefit the taxpayer's business; any benefit conferred on the party whose expenses are being paid must be only incidental. AMW Invs., Inc. v. Comm'r, No. 3901-94, 1996 Tax Ct. Memo LEXIS 255, at *13-*14 (May 22, 1996). Second, the tax court "must then judge whether it is an ordinary and necessary expense of the [taxpayer's] trade or business; that is, is it an appropriate expenditure for the furtherance or promotion of that trade or

business?  If so, the expense is deductible by the individual paying it."  Lohrke, 48 T.C. at 688.

The second prong of this test, as applied to legal expenses, reflects the focus on the origin of the subject of litigation, and not on the consequences to the taxpayer.  United States v. Gilmore, 372 U.S. 39, 48 (1963) ("[T]he characterization, as 'business' or 'personal,' of the litigation costs of resisting a claim depends on whether or not the claim arises in connection with the taxpayer's profit-seeking activities.  It does not depend on the consequences that might result . . . .") (emphasis in original).  A corporation may not pay the legal expenses of an indispensable employee merely on the rationale that the employee may otherwise lose his case and be imprisoned, with disastrous results to the corporation.  Jack's Maint. Contractors, Inc. v. Comm'r, 703 F.2d 154, 156-57 (5th Cir. 1983) (per curiam).

Were the contrary rule adopted, businesses could deduct all manner of personal expenses paid on behalf of indispensable employees as long as the expenses were necessary to keep them employed; such a rule "would be far too broad."  Id. at 157; see also Cummins Diesel Sales, Inc. v. United States, 207 F. Supp. 746, 748-49 (D. Or. 1962), aff'd, 321 F.2d 503 (9th Cir. 1963) (denying a corporate deduction for the wages of a nurse whose care was necessary to the principal officer and shareholder of the corporation).  In order to prevent this small exception from

-12-

throwing open the floodgates of corporate deduction, the second prong of the <u>Lohrke</u> test requires that the expense arise in connection with the business activities of the taxpayer paying the expense. <u>See</u> <u>Lohrke</u>, 48 T.C. at 688; <u>see also</u> <u>Gilmore</u>, 372 U.S. at 48; <u>Kornhauser</u>, 276 U.S. at 153.

2. <u>Factual Analysis</u>

The taxpayers concede that the tax court articulated the correct principles of law, but argue that these principles were incorrectly applied to the facts. The tax court found that there was insufficient evidence under the "ordinary and necessary" second prong of the <u>Lohrke</u> test. It found no evidence "that indicates that Richichi would not have provided the protection to Capital Video if Guarino had not participated in the conspiracy relating to Richichi's taxes and if Capital Video had not paid Guarino's legal fees." <u>Capital Video</u>, 2002 Tax Ct. Memo LEXIS 42, at *10. Therefore, the petitioners had "not established that Guarino's participation in the conspiracy . . . and Capital Video's payment of the legal fees in dispute had a sufficient business relationship with the protection or promotion of Capital Video's business." <u>Id.</u>

For Capital Video to deduct the legal fees paid for Guarino's criminal defense, it is not enough to argue that its business would be in danger if Guarino were convicted of the crimes

-13-

of which he was accused.[5]  It is not enough for Capital Video to argue that its decision to pay for Guarino's legal fees was made primarily for business reasons.  When, as here, the corporation pays the legal expenses of a sole shareholder, it may be difficult to disentangle the motive of the business from that of the shareholder.  Instead, Capital Video must also prove that the origin of the expense, here Guarino's criminal conspiracy activity, arose in connection with, or proximately resulted from, Capital Video's business activities.  <u>Gilmore</u>, 372 U.S. at 48.

There is no clear error in the tax court's factual finding that the petitioners failed to establish that the expense was an ordinary and necessary one.  Simply put, the petitioners presented no evidence that the criminal charge, the conspiracy to avoid paying Richichi's taxes (even ignoring the other charges), was sufficiently related to Capital Video.  No one testified, for example, that the protection Richichi offered would not be provided had Guarino not helped to hide the tribute payments, or that such tax conspiracies are an integral part of tribute payments to organized crime networks.  There was nothing in the record that required the tax court to make a finding that the conspiracy was related to the promotion of Capital Video's business.  The burden of proof is on the taxpayer; had the petitioners introduced

---

[5] In fact, the sales and resulting profits of Capital Video actually increased while Guarino was incarcerated.

-14-

credible evidence on this point, the burden would have been shifted to the IRS, I.R.C. § 7491(a), but no such evidence was introduced.

The petitioners maintain that even though there was no direct evidence requiring a contrary conclusion, it was clear error for the tax court to refuse to make a "common-sense inference" that the tax conspiracy was a necessary part of the tribute payment scheme. They argue that the underlying payment of protection was an ordinary and necessary expense of Capital Video and that a crime necessarily carries with it a cover-up, and so the cover-up must also be an ordinary and necessary expense. There were more than adequate grounds to refuse to make such an inference.

We hold[6] there was a fatal lack of evidence regarding the relationship between the tribute payments, the tax conspiracy, and Capital Video. While Capital Video may have benefitted from Richichi's protection, there was no evidence presented as to what services Richichi provided Capital Video. It is impossible to ascertain from the record whether Capital Video was a primary or even a significant beneficiary of the services, if any, exchanged

---

[6] As background, we note that the indictments accused Guarino of four means of engaging in criminal misconduct, only one of which referenced or involved Capital Video in any way. The other three involved other pornography distribution enterprises and Guarino's Las Vegas show. The legal fees were paid to lawyers who were defending Guarino against all of these charges. The mere fact that Guarino pled guilty to only the conspiracy charge of the second superseding indictment, which described conduct linked to Capital Video as well as other conduct, does not transform the legal fees paid to resolve all of these criminal indictments into expenses deductible by Capital Video.

for the tribute payments. Furthermore, no evidence was introduced that the effectiveness of the tribute payments depended on the resulting tax conspiracy. In light of these gaps in the evidence, the taxpayers did not show that the tribute payments were ordinary and necessary expenses of Capital Video. Even if the tax court did make an inference linking the tribute payments to the conspiracy charge, as the petitioners request, that inference itself would not result in a finding that the legal fees were deductible, because the tribute payments themselves are not clearly linked to the business of Capital Video. We cannot say the tax court committed clear error in rejecting the hypothesis that the tribute payments, as to Capital Video, necessitated the cover up which resulted in one of the criminal charges in the absence of evidence of this relationship.

In sum, the tax court did not commit clear error by refusing to find that the payment of legal fees was an ordinary and necessary business expense by Capital Video. The deductions do not meet the second prong of the Lohrke test. Accordingly, we need not reach the question of the motive for the payments under Lohrke's first prong.

B.  Income to Guarino

Once the tax court determined that the $423,101 in legal fees paid by Capital Video after it became a subchapter S corporation were not deductible, "such adjustment mechanically

-16-

results in additional income to Guarino in that same amount as a result of the corresponding increase in Guarino's share of the income of Capital Video, as an S corporation." Capital Video, 2002 Tax Ct. Memo LEXIS 42, at *12. Subchapter S corporations do not retain profits or losses but instead pass them to their shareholders every year. See I.R.C. § 1366(a). Once it is determined that the legal fees were not deductible business expenses, Capital Video's S corporation taxable income is increased by $423,101. Guarino, as the sole shareholder, must pay taxes on that amount as personal income. This result depends not on whether that money was spent for his benefit; instead, it flows directly from the pass-through nature of S corporation status.

The tax court also concluded that the $93,936 in legal fees paid during calendar year 1996 while Capital Video was a subchapter C corporation should be construed as a constructive dividend to Guarino, and that he thus owed tax on that amount as well. Capital Video, 2002 Tax Ct. Memo LEXIS 42, at *11-*12; see Hadley v. Comm'r, 36 F.2d 543, 545 (D.C. Cir. 1929); Hood v. Comm'r, 115 T.C. 172, 180 (2000); Magnon v. Comm'r, 73 T.C. 980, 993-94 (1980). Guarino has not challenged this holding on appeal; he disputes the finding of a constructive dividend solely by arguing that the legal expenses were deductible by Capital Video. Because we find otherwise, that portion spent by Capital Video as a subchapter C corporation constitutes a constructive dividend and

-17-

is therefore taxable to Guarino as ordinary income.  I.R.C. § 61(a)(7).

C.  <u>Miscellaneous Itemized Deductions</u>

Finally, Guarino argues that he should be able to deduct the legal expenses as miscellaneous itemized business expense deductions under I.R.C. § 162(a).  He claims that if the legal fees paid by Capital Video are to be taxable to him, then those legal fees should be considered to have been paid by him directly; moreover, he argues, once the legal fees are treated as his expense, he should be able to deduct them as a business expense. The tax court held that Guarino had not shown that the legal expenses were sufficiently related to a trade or business. <u>Capital Video</u>, 2002 Tax Ct. Memo LEXIS 42, at *13.  There was no clear error in this holding.

Section 162(a) permits deductions by individuals as well as by corporations for "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business."  I.R.C. § 162(a).  Individuals may deduct legal expenses under § 162(a) if they are sufficiently related to the taxpayer's business. <u>Tellier</u>, 383 U.S. at 689.  The appropriate test is whether the "origin and character of the claim with respect to which an expense was incurred" is business or personal. <u>Gilmore</u>, 372 U.S. at 49.

To meet the ordinary and necessary § 162(a) standard for deductibility from his personal taxes, Guarino need not show that

the criminal activity originated with Capital Video; the relationships with his other business ventures, including the precious metals business and the Las Vegas show which were also protected and aided by Richichi, are also relevant. Ultimately, however, Guarino did not show that the legal defense fees were ordinary and necessary business expenses, even considering the entirety of his business enterprises. The failings are similar to those set forth in the analysis of Capital Video's deduction. Guarino did not show a link between the protection of the businesses and the tax conspiracy in which he engaged; there was no evidence that the latter was an integral part of securing the former. Moreover, the indictment alleged, and the plea agreement acknowledged, conduct beyond merely hiding the tribute payments from the government. There was no clear error in the finding that the legal fees are not deductible by Guarino under § 162(a).

The judgment of the tax court against both Capital Video and Guarino is **affirmed**.